# CASES DETERMINED

### BY THE

# SUPREME COURT

#### OF THE

## STATE OF MISSOURI

##### AT THE

#### OCTOBER TERM, 1898.

---

*(Continued from Volume 146.)*

---

STATE ex inf. CROW, Attorney-General, et al., Relators, v. FLEMING et al.

#### In Banc, February 16, 1898.*

1. **Quo Warranto: USURPING CORPORATE POWERS.** An action of *quo warranto* for usurping the powers of a corporation is properly brought against the officers of such corporation as individuals.

2. **Incorporating Town: PETITION: ACTION OF COUNTY COURT: JUDGMENT.** The determination of a court that the majority of the taxable inhabitants of a town signed the petition to be incorporated as a city, as provided by Revised Statutes 1889, section 977, makes the order therein incorporating the city a judgment, and not simply a ministerial or legislative act.

---

*NOTE—Delivered to Reporter on June 10, 1899.

3. ——: JUDGMENT: HOW INVALIDATED. The judgment of a court, allowing a town to be incorporated as a city, may be invalidated by an action of *quo warranto*, since it is a direct proceeding by the State, which was not a party to the record in the cause in which such judgment was rendered, and consequently was not bound thereby.

4. ——: QUO WARRANTO: ACTION LIES UNDER STATUTE. An action of *quo warranto* lies to question the right of a city to extend its territorial limits as allowed by Revised Statutes 1889, section 1580, as amended by Acts 1895, page 65.

5. ——: GENERAL LAW OF 1895. Act of March 16, 1895, relating to elections in cities of the fourth class, which applies to all cities in the State of a certain class, is a general law, and not a local or special one.

6. Pleading: MOTION TO STRIKE OUT. A motion to strike out portions of a pleading should be specific, so as to clearly indicate the irrelevant parts.

## *Quo Warranto.*

COMMISSIONER APPOINTED.

EDWARD C. CROW, Attorney-General, FREDERICK A. HEIDORN, JOHN F. SHEPLEY and CHARLES S. REBER for relators.

(1) Municipal corporations in this country can only be created by legislative enactment. Hence it follows, that the county court of St. Louis county in declaring, by means of its so-called order of April 20, 1896, the city of Webster Groves incorporated was performing a purely ministerial or legislative function. Art. IX, sec. 7, Constitution; People v. Bennett, 29 Mich. 451; State v. Simons, 32 Minn. 540; Galesburg v. Hawkinson, 75 Ill. 153; State v. Mott, 48 Neb. 683; People v. Nevada, 6 Cal. 143; Cochran v. McCleary, 22 Ia. 75; Wood v. Henry, 55 Mo. 560; Hull v. De Armond, 46 Mo. App. 596. (2) *Quo warranto* is the proper remedy to test the right of a city to exercise its functions over territory alleged to be outside of its corporate limits. State ex rel. v. Brown, 108 Mo. 153; State v. Westport, 116 Mo. 582; People

State ex inf. v. Fleming.

v. Oakland, 92 Cal. 611; East Dallas v. State, 73 Tex. 370; People v. Peoria, 166 Ill. 517; Kuhn v. Port Townsend, 12 Wash. 605.    (3) This action was properly brought against the respondents as individuals, and not against the supposed city, whose functions respondents were and are undertaking to exercise.    King v. Cusacke, 2 Roll. Rep. 113; People v. Railroad, 15 Wend. 113; People v. Peoria, 166 Ill. 524; People v. Spring Valley, 129 Ill. 169; State v. Uridell, 37 Neb. 371.

WEBSTER & WEBSTER, G. A. FINKELNBURG and DAWSON & GARVIN for respondents.

(1)    What constitutes jurisdiction?    That question has been asked and answered innumerable times and always the answer is the same.    It is the power to hear and determine the particular case.    U. S. v. Arredondo, 6 Pet. 691; Cooper v. Sunderland, 3 Ia. 114; Morrow v. Weed, 4 Ia. 77; Babb v. Bruere, 23 Mo. App. 604; State v. Withrow, 108 Mo. 1.    Jurisdiction of the subject-matter is the power to hear and determine cases of the general class to which the proceedings in question belong.    State ex rel. v. Smith, 104 Mo. 419; Hope v. Blair, 105 Mo. 85; State ex rel. v. Neville, 110 Mo. 345; Musick v. Railroad, 114 Mo. 309; Leonard v. Sparks, 117 Mo. 103; Burke v. Kansas City, 118 Mo. 309; State v. Elkins, 130 Mo. 90.    (2)    Whether or not the petition was signed by a majority of taxable inhabitants is immaterial.    That was not a jurisdictional fact.    It was one of the facts as to the existence or non-existency of which the court was to determine after it had acquired jurisdiction. The filing of the petition in the county court of itself conferred jurisdiction upon the court, irrespective of the form or contents of the petition.    Commissioners v. Markle, 46 Ind. 96; Terre Haute v. Beach, 96 Ind. 143; Hyatt v. Bates, 35 Barbour, 308; Kuhn v. Port Townsend, 12 Wash. 605.    The respondents claim that the finding by the county court, in its

order incorporating the city of Webster Groves, that the petition was signed by a majority of the taxable inhabitants of the territory incorporated is final, and conclusive, binding alike on this court, and all other courts. This view is supported by the language of the statute and by numerous decisions of the appellate courts of this State and other States. State ex rel. v. Weatherby, 45 Mo. 17; State v. Evans, 83 Mo. 319; State ex rel. v. Young, 84 Mo. 90; State ex rel. v. Powles, 136 Mo. 376; Leonard v. Sparks, 117 Mo. 116; Fulkerson v. Davenport, 70 Mo. 546; State ex rel. v. Simmons, 35 Mo. App. 374; State v. Searcy, 39 Mo. App. 393; State v. Mackin, 51 Mo. App. 299. A stranger to the judgment may show that it was procured by fraud whenever it is attempted by the judgment to affect his rights. 1 Black on Judgments, 317; Callahan v. Griswold, 9 Mo. 784; Myers v. Miller, 55 Mo. App. 338. But the fraud must be specifically charged and pointed out, and it must have been of such a nature as to have deceived the other party and the court, and which could not have been exposed at the time. Martin v. Lutkewitte, 50 Mo. 256. Such impeachment can only occur when satisfactory evidence is offered that such impeaching fraud occurred in the very concoction or procurement of the judgment. Bigelow on Fraud, pp. 86-90, 94, 95 and 636; Payne v. O'Shea, 84 Mo. 129; McClanahan v. West, 100 Mo. 320; Oxley Stave Co. v. Butler Co., 121 Mo. 630; Nichols v. Stevens, 123 Mo. 116; Moody v. Peyton, 135 Mo. 489. In the case at bar, however, no fraud is charged or shown in the procuring of the judgment, or in any of the proceedings anterior to its rendition. Therefore, the order of the county court can not be set aside on the ground of fraud, and if not on that ground, not at all, as it can not be claimed that the State occupies any different or more advantageous position than any other stranger. (4) The charge that the boundaries as defined by the order of the court, "included many acres of land used for pasture and

farming purposes" is not sustained by the evidence, but if it were, it does not follow that the incorporation would be void. The law does not prohibit the incorporation of farming lands to a reasonable extent.   State ex rel. v. Campbell, 120 Mo. 396; State ex rel. v. Young, 61 Mo. App. 494; Burnes v. Edgerton, 143 Mo. 563.   And so the original subdivision with the various other subdivisions surrounding and adjoining it, constitute but a single town, and as such, may be incorporated under our law.   In re Duquesne Borough, 147 Pa. St. 58; In re Yeardon Borough, 14 Pa. Co. Court Rep. 290, In re Taylor Borough, 160 Pa. St. 475.   (5)   The real object of this proceeding is to have this court declare void the extension of the limits of the city of Webster Groves made in May, 1897 (under section 1580, R. S. 1889, as amended by act of 1895, section 1, p. 67), but in this proceeding, this court will not inquire into, nor permit the relators to question the validity of that extension, for the sufficient reason that the city, the municipality itself, has not been made a party to the action.   People v. Railroad, 15 Wend. 113; People v. Stanford, 77 Cal. 363; People v. Flint, 64 Cal. 49; People v. Spring Valley, 129 Ill. 169; State v. Gas Light Co., 18 Ohio St. 262; State v. Taylor, 25 Ohio St. 280; Drainage Co. v. State, 43 Ind. 236; State v. Somerby, 42 Minn. 55; State v. Coffee, 59 Mo. 59; Dillon on Mun. Corps., secs. 895, 896 and 1897; Spelling on Extr. Relief, sec. 1843; Angell & Ames on Corps., sec. 756; Boone on Corps., 162, 163.   And in this connection we again submit for the consideration of the court the question whether the legality of an extension of city limits can be tested by quo warranto at all.   The authorities outside of this State are adverse to the remedy of quo warranto in such cases. People v. Whitcomb, 55 Ill. 172; Stultz v. State, 65 Ind. 492; People v. Springfield, 61 Ill. App. 86; High on Extr. Remedies, sec. 618; 2 Spelling on Extr. Relief, secs. 1775 and 1802.   (6)   When the exercise of specific power is

granted to a municipality in express terms by the legislature, its reasonableness can not be reviewed by the courts. 1 Dillon on Mun. Corps., 396; Harr and Bemis Mun. Ord., sec. 188; D. C. v. Waggaman, Mackay, 335; State v. Clarke, 54 Mo. 17; State v. Schweikardt, 109 Mo. 496; Giboney v. Cape Girardeau, 58 Mo. 141.

SHERWOOD, J.—This is an original proceeding instituted in this court by the attorney-general and the prosecuting attorney of St. Louis county, in which they inquire *quo warranto* William S. Fleming as mayor, and the other respondents as board of aldermen, of the pretended city of Webster Groves, have usurped and are still usurping the powers, privileges, franchises, and prerogatives of a city of the fourth class over certain specified territory, the boundaries whereof are fully set forth in the petition.

Briefly told the history of this case is as follows: On March 26, 1896, a petition purporting to be signed by a majority of the taxable inhabitants of the unincorporated town of Webster Groves, and praying for its incorporation as a city of the fourth class, was presented to the county court of St. Louis county, in accordance with section 977, Revised Statutes 1889. The boundaries of the territory which it was desired to have so incorporated were fully set forth in the petition. They are not the same boundaries set out in the information filed in this case, but the territory which the court was asked to incorporate is included within the boundaries set out in said information. On the second of April, 1896, said county court made an order incorporating the city of Webster Groves, in accordance with the prayer of the petition; and on the sixth of April it appointed William S. Fleming mayor, and the other respondents aldermen, of said city. On the twentieth of the same month it made a *nunc pro tunc* order as of April 2, in order to correct some fancied irregularities in the original order of April 2. The several appointees of the county court qualified and entered

upon the discharge of their duties, and thereafter an ordinance (No. 1) was duly passed, dividing the city into wards. At the general election in April, 1897, the respondents were elected mayor and aldermen of said city, respectively, were duly commissioned and qualified, and are now acting as such. On the twenty-ninth of April, 1897, an ordinance (No. 59) was passed by the board of aldermen, and approved by the mayor, extending the limits of said city (in accordance with section 1580, Revised Statutes 1889, as amended by Acts 1895, page 65) so as to include all the territory described in the information herein, and calling a special election, to be held on May 25, at which the question of such extension should be submitted to the voters of the city for their approval. At the election held on that day a large majority of the voters of said city assented to such extension. On the twenty-ninth of said May an ordinance (No. 64) was passed by the board of aldermen, and approved by the mayor, reciting the result of the election held on the twenty-fifth, and declaring the limits of the city extended accordingly. In both of these ordinances the extended limits were fully described. On June 10 the mayor, in accordance with the provisions of ordinance number 59, issued his proclamation declaring such extension of the limits. On the seventeenth of July, 1897, an ordinance (No. 73) was passed by the board of aldermen, and approved by the mayor, dividing the enlarged city into four wards, and also ordinance number 74, providing for an election to be held August 4, in the Fourth ward, for two aldermen therefrom. At said election Thomas S. Burnett and Thomas J. Shands were duly elected, and subsequently qualified. At the time of the filing of the information they were acting as such aldermen, but neither of them has been made a party to this action. The respondents, in their return, set out *in haec verba* the several orders of the county court of St. Louis county incorporating the city of Webster Groves, with certain fixed and determined bounda-

ries, in said orders fully set forth. The informants, in re-- ply, admit that said orders were made and entered of record as alleged, but say that they were and are null and void, because: "(1) The petition for incorporation was not signed by a majority of the taxable inhabitants of the unincorporated town or city of Webster Groves. (2) That said order incorporated within the limits of said city of Webster Groves, as set forth in said order, large tracts of territory not included within the limits of the unincorporated town or city of Webster Groves, which tracts of territory so included contained many acres of land used for pasture and farming purposes. And informants further aver that the ordinance and proceedings extending the limits of the city of Webster were void on account of alleged irregularities in the vote upon the proposition to extend the same; and it is further alleged that there was no necessity for such an extension, that the territory sought to be annexed consists mostly of pastoral and farming lands, that the extension ordinance was passed solely for the purpose of raising revenue, and, upon information and belief, that between 80 and 90 per cent of the taxpayers of the district sought to be annexed were, and still are, opposed to said annexation," etc. A motion to strike out from informants' reply all the allegations of fact in support of the above points was filed, on the ground that the matters and things therein charged and set forth are wholly irrelevant and immaterial to any issue which can possibly be raised in this cause, and because they are not proper subjects of inquiry herein. This record discloses that the State has, in the institution of this prosecution, a twofold object in view, to wit: First, to have declared void the original incorporation of the city of Webster Groves by the county court of St. Louis county, and, failing in that, second, to have the subsequent extension of the limits of said city declared void.

1. The authorities cited on behalf of informants sanction the direction of the information against the respondents

as individuals, in manner and form as it has been directed. The true rule in such cases was tersely stated in an early English case (Rex v. Amery, 2 Term R. 524), where, quoting from Lord HALE's commonplace book, is was said "that, if a *quo warranto* be brought for usurping to be a corporation, it should be brought against particular persons, because it is in disaffirmance of the corporation, and then judgment of ouster shall be given; but, if it be brought for liberties claimed by a corporation, it must be brought against the corporation itself." See, also, 2 Spell. Extr. Relief, secs. 1843, 1844, 1852, 1811, 1812, and cases cited; People v. City of Spring Valley, 129 Ill. 169; 21 N. E. Rep. 843; People v. Rensselaer & S. R. Co., 15 Wend. 113; 19 Am. and Eng. Ency. Law, 682; State v. McReynolds, 61 Mo. 203.

2. The record of the order of the county court shows that the city of Webster Groves was regularly incorporated, and on this state of facts it is insisted by respondents that this order has the force and effect of a judgment, while by informants it is asserted that such order was simply a ministerial or legislative act. Our statute relative to the incorporation of cities and towns, among other things, provides: "Whenever a majority of the inhabitants of any such city or town shall present a petition to the county court of the county in which such city or town is situated, setting forth the metes and bounds of their city or town and commons, and praying that they may be incorporated, and a police established for their local government, and for the preservation and regulation of any commons appertaining to such city or town, and if the court shall be satisfied that a majority of the taxable inhabitants of such town have signed such petition, the court shall declare such city or town incorporated, designating in such order the metes and bounds thereof, and thenceforth the inhabitants within such bounds shall be a body politic and incorporate, by the name and style of the city of————." R. S. 1889, sec. 977. Among numerous definitions of the term

"judgment," this one is deemed sufficiently accurate, to wit: "The decision or sentence of the law, pronounced by a court or other competent tribunal upon the matter contained in the record." 1 Freem. Judg. [4 Ed.], sec. 2. Or it may, perhaps, be defined as the decision by a court of competent jurisdiction upon a matter presented before it which involves a question of fact or a question of law, or a compound question of both law and fact. Now, in this case, there can be no doubt that under either of these definitions the action of the county court was to all intents and purposes a judgment. It determined a compound question of both law and fact: First, as to number of inhabitants within the boundaries of the specified district; second, a question of law, whether a majority of the "taxable inhabitants" of such district were the signers of the presented petition. Precisely this view, in effect, was taken by this court in State v. Evans, 83 Mo. 319, wherein it was ruled that the decision by a county court, on presentation of a petition for a dramshop license under a law which required the applicant for license to be a person of "good character," and that the petition was "signed by a majority of the taxpaying citizens," etc., that these necessary facts existed, was a judgment impregnable to collateral attack, whatever might have been the actual facts in the case, and that evidence on the part of the State prosecuting the defendant under an indictment for selling without license, to show the actual facts, was altogether inadmissible. It seems to me that all of the qualities and incidents which inhere in the action of the county court on presentation of a petition for dramshop license, and make that action judicial, and immune from collateral attack, equally inhere in similar action of the county court on presentation of a petition for incorporation of a city. The same rule, it would appear, should hold in the case at bar as would hold in the circuit court, where a petition is presented to incorporate a private corporation; and in that sort of case no question has ever been

raised that the action of the circuit court was judicial. Besides, in the early case of Kayser v. Trustees, 16 Mo. 88, it was determined (SCOTT, J., delivering the opinion) that the act of the county incorporating a town under the law of 1845 was not subject to be questioned or held for naught in any collateral method or procedure, and that as against such a method the act of the court was valid and final, in other words, a *judgment*. See, also, Wood v. Peake, 8 Johns. 68; Hill v. City of Kahoka, 35 Fed. Rep. 32. Opposing the view that such action of the county court is judicial, the case of Woods v. Henry, 55 Mo. 560, has been cited, where the remark is made that the act of the county court in incorporating a town was "more in the nature of a legislative or administrative, rather than a judicial act." This remark, however, was *obiter;* but, for reasons heretofore given, it should not, in any event, be followed.

3. But, notwithstanding this, it does not thence follow that the judgment of the county court is impregnable to direct attack through the medium of *quo warranto,* because this is a *direct* proceeding by the State, which will invalidate even the judgment of a court, as the State is not a party to the record in the cause in which such judgment is rendered, and consequently is not bound thereby. And that *quo warranto* is the proper method of procedure in a case of this kind is distinctly recognized in Kayser v. Trustees, 16 Mo. 88; directly decided in State v. McReynolds, 61 Mo. 203 ; necessarily determined in Woods v. Henry, 55 Mo. 560. State v. Weatherby, 45 Mo. 17, is not in harmony with the view just announced, since it applies the same rule to the effect of a direct attack by *quo warranto* as results from a mere collateral attack. That case was therefore not carefully considered. It cites no authorities for its position, is not law, and will not be followed. The utterance in State v. Powles, 136 Mo. 376, was *obiter,* and did not go to the point in judgment. The case, however, was correctly decided.

4.   There is conflict of authority as to whether *quo warranto* will lie in regard to the extension of the territorial limits of a city.   This court, however, in State v. McMillan, 108 Mo. 153, entertained such a writ, and held, on the facts admitted by demurrer, that the city of Westport wrongfully exercised its authority over certain territory outside of its corporate boundaries.   This entertainment of such a cause for such a prescribed purpose was nothing less than a tacit avowal of the right and propriety of doing so, since otherwise the writ would indubitably have been quashed.   The like remark may be made as to State v. Town of Westport, 116 Mo. 582.   See, also, to same effect, People v. City of Oakland, 92 Cal. 611; People v. City of Peoria, 166 Ill. 517; City of East Dallas v. State, 73 Tex. 370; 2 Spell., Extr. Relief, sec. 1802.   This point will, in consequence, be ruled in favor of informants.

5.   Relative to the election held under Ordinance 59 for the extension of the city limits the informants make contention that said election was invalidated because not held in conformity to the Australian ballot law, and that the statute of 1895, approved March 16 (Laws 1895, p. 170), which purports to do away with the Australian ballot law in cities of the fourth class, is violative of section 53 of article 4 of the Constitution, in that it is a "local or special law," and provides "for the opening and conducting of elections."   This *much-abused, much-misunderstood* term is not applicable in this case, for the reason that this law is a *general* law, and applies to all cities of the fourth class; and *perhaps* it may be considered as established in this State that a statute which relates to persons or things as a class is a general law.   State v. Tolle, 71 Mo. 645; State v. Herrmann, 75 Mo. 349, and numerous other cases.   And it is entirely competent for the legislature to enact such a law; such power being directly conferred on the legislature by section 25 of article IX, and other sections of that article, and indirectly conferred by section

State ex inf. v. Fleming.

53 of article IV of the Constitution, since the prohibition of local or special laws is an implied requirement that legislation shall be general. Suth. St. Const., sec. 126. And even if such general law should *change the charters of cities,* still this does not make it a local or special law. Indeed, such change is the *experimentum crucis* of what constitutes a *general law,* and distinguishes it from a local or special law. Copeland v. City of St. Joseph, 126 Mo. loc. cit. 426. The citation of this case may serve to show the views of this court on this *much-debated* question, and to show, also, that if the law in the case mentioned (Laws 1887, p. 53, sec. 5), which changed the charters of all cities of the second class by permitting them to extend their limits, was not a local or special law, a law like that under contemplation, which provides "for the opening and conducting of elections" in all cities of the fourth class, must, on similar grounds, be held equally free from the charge of being a local or special law. It results from these considerations that this point must be ruled against the contention of informants.

6. These remarks are perhaps sufficient to indicate our views on the motion to strike out portions of informants' reply, of which motion it may be said that it would have been better had it more clearly indicated the precise portions desired to be stricken out. Pearce v. McIntyre, 29 Mo. 423. But, inasmuch as testimony has to be taken in order to determine the issues of fact herein joined, we defer further discussion or investigation until such testimony be received; and we say this the more readily because, if the original act of incorporation. should prove invalid, it will be wholly unnecessary to look into any extension of territorial limits. A commissioner will be appointed to take testimony, which, when taken, this cause will again be set down for argument. All concur, except Robinson, J., absent, and Williams, J., not sitting.