## THE STATE ex rel. VITAL W. GARESCHE v. CORNELIUS ROACH, Secretary of State.

### In Banc, June 2, 1914.

1. **JUDICIAL NOTICE: Boundary of Judicial Circuit.** The court will take judicial notice that the Eighth Judicial Circuit is composed wholly of the city of St. Louis, because that fact is embodied in a general law.

2. ————: ————: **Admitted by Demurrer.** A charge that the Eighth Judicial Circuit is composed of the city of St. Louis is admitted by demurrer.

3. **STATUTORY CONSTRUCTION: General and Special Provisions.** The general provisions of a statute must yield to special provisions, where the general expressions are inconsistent with the specific ones.

4. ————: ————: **Primary Election: Candidates for Circuit Judge: Place of Filing of Declaration.** A statute requiring declaration papers of candidates for "circuit judges" to be filed with the Secretary of State and "for officers to be voted for wholly within one county or in the city of St. Louis, in the

office of the county clerk or the office of the election commissioners of the city of St. Louis," means that a candidate for circuit judge in the city of St. Louis, which city composes the Eighth Judicial Circuit, shall file his declaration with the Secretary of State. No other conclusion can be reached unless the words "circuit judges" are eliminated from the act; and those words being special and being inconsistent with those in the next clause, they must control.

5. **STATUTE: Title: Population: Present and Future.** The title to an act, relating to "counties and cities having three hundred and fifty thousand inhabitants or more," is not so narrow that it will not authorize an inclusion in the body of the act of "all counties and cities in this State which now have and such as may hereafter have a population of three hundred and fifty thousand inhabitants or more."

6. ————: ————: **No Designation of Repealing Sections.** The statute will not be held to be unconstitutional because its title, which blazes forth that its purpose is the establishment of a nonpartisan judiciary in the circuit courts, does not recite that the act contains sections repealing other conflicting and inconsistent laws.

7. ————: ————: **Matters Ancillary to General Purpose.** When the general purpose of an act is clearly set forth in its title, then all ancillary matters, germane and not inconsistent with that purpose, and necessary in order to give life and effect thereto, and without which necessary details its purpose would fail or be greatly impaired, are to be read by necessary implication into the title.

8. **SPECIAL LAW: Usual Classification by Population, etc.** It is for the courts to determine whether or not an act is local. A classification of cities according to population is not alone determinative. The questions of whether it is local and whether it is necessary still remain, for in spite of such classification, the Constitution does not permit a local or special law "where a general law may be made applicable," and says that is a "judicial question" to be "judicially determined."

9. ————: **Nonpartisan Judicial Act: Local and Special.** The Nonpartisan Judicial Act of 1913 (Laws 1913, p. 334) providing that in cities having 350,000 inhabitants or more, candidates for circuit judges shall be nominated by a convention of delegates chosen on the day of the general state-wide primary by the voters of each party, and that the names of candidates so nominated shall be printed on all tickets of all parties to be voted at the general election, is a special and local law, applying to only one city in the State, and that a general law on the subject could "be made applicable" is shown by

the fact that the state-wide primary law, in pursuance to which circuit judges have been nominated, has been in force for years.

10. ——: ——: ——: **Applicable to One Office.** An act applicable to the nomination of candidates for one office in one city only, is a special law, and, there being in force in said city other laws providing other methods of nominating candidates for all other offices, is violative of the constitutional inhibition against the enactment of a special or local law "where a general law can be made applicable."

## Mandamus.

WRIT ALLOWED.

*Spencer & Donnell* and *George B. Webster* for relator.

(1) The so-called Non-partisan Judiciary Act of 1913 is unconstitutional because it violates article 4, section 28, of the Constitution, in that it purports to repeal existing laws without any indication of such repeal in its title. (2) The so-called Non-partisan Judiciary Act of 1913 is unconstitutional because it violates article 4, section 23, paragraph 32, of the Constitution in that it is a local or special law enacted "where a general law can be made applicable." Bridges v. Mining Co., 252 Mo. 53; Hays v. Mining Co., 227 Mo. 288; Henderson v. Koenig, 168 Mo. 375; State v. Hill, 147 Mo. 63; State ex rel. v. Messerly, 198 Mo. 356; State ex rel. v. Turner, 210 Mo. 83; State v. Anslinger, 171 Mo. 611. (3) The so-called Non-partisan Judiciary Act of 1913, is unconstitutional because it violates article 4, section 53, paragraph 2, of the Constitution, in that it is a local or special law tending to regulate the affairs of ° St. Louis City alone. Hays v. Mining Co., 227 Mo. 302; Henderson v. Koenig, 168 Mo. 376; State ex rel. v. Turner, 210 Mo. 83; Bridges v. Mining Co., 252 Mo. 57; State v. Anslinger, 171 Mo. 611. (a) It does not

relate to cities of the first class. R. S. 1909, sec. 8524. (b) It does not refer to cities having special charter. Constitution, art. 9, sec. 16. (4) The so-called Non-partisan Judiciary Act of 1913 is unconstitutional because it violates section nine of the Bill of Rights, requiring that all elections shall be free and open. Wally v. Kennedy, 2 Yerg. 554. (5) The so-called Non-Partisan Judiciary Act of 1913 is unconstitutional because it is an attempt to partially repeal a general law by the enactment of a special and local law. Constitution, art. 4, sec. 53, par. 32; R. S. 1909, chap. 43, art. 4; Laws 1913, p. 334; Henderson v. Koenig, 168 Mo. 371; State ex rel. v. Messerly, 198 Mo. 355; State v. Anslinger, 171 Mo. 600.

*John T. Barker,* Attorney-General, and *W. T. Rutherford,* Assistant Attorney-General, for respondent; *Marion C. Early* of counsel.

(1) Definition and nature of remedy. 26 Cyc. 139; High on Extr. Leg. Rem., p. 4, sec. 1. (2) The relator must specify the exact relief desired. State ex rel. v. Hollady, 65 Mo. 77; State ex rel. v. Railway, 77 Mo. 147; School Dist. v. Lauderbaugh, 80 Mo. 194. (3) A litigant seeking relief by mandamus must allege and show a clear legal right to have the thing sought by it done, and done in the manner and by the person sought to be coerced. High on Extr. Leg. Rem., p. 12, sec. 9; 26 Cyc. 151; State ex rel. v. Lessueur, 136 Mo. 459; State ex rel. v. Williams, 99 Mo. 221; State ex rel. v. Boonville B. Co., 206 Mo. 74; State ex rel. v. McIntosh, 205 Mo. 610; State ex rel. v. Hudson, 226 Mo. 265; People v. Hatch, 33 Ill. 140; People v. Lieb, 85 Ill. 490; People v. Klokke, 92 Ill. 137; Swigert v. County of Hamilton, 130 Ill. 549; Mayor v. Aspen, T. & L. Co., 10 Colo. 198; State v. Buhler, 90 Mo. 570. (4) An act in general terms repealing all conflicting provisions of previous acts will have the effect to re-

peal any such conflicting acts. 2 Lewis's Sutherland Stat. Const., p. 492; State v. Yardley, 34 L. R. A. (Tenn.) 671; State ex rel. v. Assurance Co., 251 Mo. 292. (5) Courts take judicial notice of the existence and tenor of the public laws of the State. Olive v. Alabama, 4 L. R. A. 40; 7 Ency. Evidence, p. 947. (6) The courts will take judicial notice of the population of the city of St. Louis. State v. Anslinger, 171 Mo. 600; State ex inf. v. Evans, 166 Mo. 347; State ex rel. v. Miller, 100 Mo. 439; Welch v. Mann, 193 Mo. 304; Major v. Ryan, 232 Mo. 77.

FARIS, J.—This is a proceeding by mandamus to compel the respondent, as Secretary of State, to receive and file the declaration of candidacy of relator upon the Republican ticket at the ensuing primary election, for the office of circuit judge of the Eighth Judicial Circuit, which circuit is composed of the city of St. Louis.

This is a companion case to that of State ex rel. Garesche v. Drabelle et al., as members of the Board of Election Commissioners, etc., likewise submitted at this term. The two cases, for reasons which are obvious, will be considered together, and a mere memorandum made in the latter case when we shall have ruled this one.

The amended petition in the Drabelle case, apposite here for reasons hereafter to be set forth, omitting style and formal parts, is as follows:

"Vital W. Garesche, petitioner herein, represents to the court that he has attained the age of thirty years and more, is and has been a citizen of the United States for five years, has been for more than three years last past and is now a qualified voter of the State of Missouri, and is now and has been for years a resident of the Eighth Judicial Circuit of the State of Missouri, which consists of the city of St. Louis,

and is in all other respects qualified to serve as a circuit judge in said circuit.

"That heretofore, to-wit, on the 2nd day of February, 1914, he filed with the Board of Election Commissioners of the city of St. Louis in compliance with section 5862, Revised Statutes 1909, a declaration paper in words and figures as follows:

"DECLARATION PAPERS.

"St. Louis, Mo., February 2nd, 1914.

"I, the undersigned, VITAL W. GARESCHE, lawyer, 6121 Westminster Place, a resident and qualified elector of the 16th precinct of the 28th ward, of the city of St. Louis, Mo., do announce myself as a candidate for the office of circuit judge for the city of St. Louis, in the Eighth Judicial Circuit of Missouri, on the Republican ticket, to be voted for at the Primary Election to be held on the 4th day of August, 1914, in the city of St. Louis, and I further declare that if nominated and elected to such office I will qualify.

"VITAL W. GARESCHE,
"709 Wainwright Bldg.,
"St. Louis, Mo.

"RECEIPT FOR FILING FEE.

"St. Louis, Mo., February 2nd, 1914.

"Received from VITAL W. GARESCHE, of precinct 16th, Ward 28th, of the city of St. Louis, State of Missouri, the sum of twenty-five dollars, being filing fee in accordance with the Act of the Missouri General Assembly, approved June 1, 1909, relative to Primary Elections, and particularly in accordance with the provisions of such act. The filing fee being a deposit as evidence of good faith on the part of Vital W. Garesche in connection with his declaration as a candidate for the nomination as circuit judge, for the city of St. Louis, in the Eighth Judicial Circuit of Missouri on the ticket of the Republican party, the said Primary Election to be held on the 4th day of August, 1914.                THOS. K. NIEDRINGHAUS,

"Treasurer Republican State Committee.

"*Notice*—Name, occupation and address of applicant must be inserted in typewriting or print, and application must be signed by applicant.

"That before the filing thereof he paid to the treasurer of the Republican State Committee the sum of twenty-five dollars as provided by law and as shown in said declaration papers as hereinabove set out.

"That the said Board of Election Commissioners of the city of St. Louis consists of John W. Drabelle, Chairman; Joseph A. Wright, secretary; Sidney S. May and Oscar E. Buder.

"That said Board of Election Commissioners refused to receive said declaration of your petitioner or to file the same.

"That your petitioner being in doubt as to the meaning of section 5862, Revised Statutes 1909, as to the place where said declaration should be filed also tendered and offered to file the same with the Secretary of State of the State of Missouri, and that the said Secretary of State refused to receive or file the same.

"That petitioner is still in doubt under the wording of said section 5862 as to whether the said declaration ought to be filed with the Board of Election Commissioners or with the Secretary of State, and for that reason tendered and offered to file the same both with the Board of Election Commissioners and with the Secretary of State, and in this proceeding and in a similar proceeding brought by petitioner against the Secretary of State before this Honorable Court petitioner is seeking to determine *inter alia* the proper place provided by law for the filing of said declaration.

"That petitioner intends in good faith to submit himself before the people of the city of St. Louis at the primary election to be held August 4, 1914, as a candidate for the Republican nomination of circuit judge for the Eighth Judicial Circuit, which consists of the city of St. Louis.

"That the refusal of the Board of Election Commissioners to receive and file petitioner's declaration prevents him from thus submitting himself as a candidate at said primary election and leaves him without any other means of presenting himself at said primary as by law he has a right to do.

"That there was passed in 1913 (Laws 1913, p. 334) by the Legislature of Missouri, a so-called non-partisan judiciary law; which said law the respondents herein pretend and say repeals section 5862, Revised Statutes 1909, and relieves them of the duty of filing relator's declaration of intention.

"Relator further states that said so-called non-partisan judiciary law of 1913 is unconstitutional, invalid and void, because the same is in conflict with and violates:

"(a)    Article 4, section 28, of the Constitution of Missouri;

"(b)    Article 4, section 53, paragraph 32, of the Constitution;

"(c)    Article 4, section 53, paragraph 2, of the Constitution of Missouri;

"(d)    Section 9 of the Bill of Rights of the Constitution of Missouri; .

"(e)    Article 4, section 53, paragraph 33, of the Constitution of Missouri.

"And that the said non-partisan judiciary act of 1913 is invalid and of no effect for the further reason that said act is repealed by the general law subsequently passed at the same session of the Legislature relating to the same subject of elections. Said general law is set out in the Session Laws of 1913 at page 327.

"Wherefore the petitioner prays the court to issue its alternative writ of mandamus directed to John W. Drabelle, Joseph A. Wright, Sidney S. May and Oscar E. Buder as the Board of Election Commissioners of the city of St. Louis, commanding them to show cause on a day certain, to be fixed by the court, why they should not receive and file forthwith the aforesaid declaration of the petitioner and why the said alternative writ on hearing should not be made absolute and for such further process, orders and judgments as to the court may seem meet and proper."

A proper stipulation filed in this case in substance provided: (a) that the petition in the Drabelle case should, *mutatis mutandis,* be considered as the petition in the instant case, and (b) that the petition for the alternative writ should be considered as though it were such writ. To the above petition, standing for and in the legal shoes of the alternative writ, as by the above-mentioned stipulation provided, respondent demurred, for that the same "does not state facts sufficient to constitute a cause of action." If the petition above set out (reading therein *"Cornelius Roach, as Secretary of State,"* in lieu of *"Drabelle et al., as members of the Board of Election Commissioners, etc."* when and wherever necessary) states a cause of action, then the peremptory writ of mandamus should be issued in the instant case, and, as an inevitable corollary, refused in the Drabelle case.

I. It is frankly conceded, as well in the briefs as in the argument by learned counsel, on both sides, that the main question at issue is the constitutionality *vel non* of the act called by counsel the "Non-partisan Judiciary Act," and which we may likewise so style here for convenience. Counsel have been good enough to frankly eliminate all other contentions herein, except the inevitable one foreshadowed in the petition and arising from the ambiguity contained in section 5862, Revised Statutes 1909. When we have reached a decision upon the question of the validity under the organic law of the Non-partisan Judiciary Act, we must, in order to rule whether respondent in the instant case, or Drabelle and his associates, should be required to act, then construe and decide the obvious ambiguity in section 5862, supra. The latter question we meet *in limine,* since merely holding it not to be the duty of respondent Roach in any event, to receive the declaration of relator, would be to dispose of the case

*Candidates for Circuit Judge in St. Louis: Declaration: Place of Filing.*

on a sort of adventitious issue utterly indecisive of the vexing question of the constitutionality of the Non-partisan Judiciary Act.

The history of the general primary election law, in addition to its being such a law as we judicially notice, is a part of the political history of the State and we need not here refer at great length to it. Practically all elective officers in State and county and the city of St. Louis are to be subject to its provisions and to be chosen pursuant to its comprehensive scheme, as witness the first section thereof:

"Hereafter all candidates for elective offices shall be nominated by a primary election held in accordance with this article. This article shall not apply to special elections to fill vacancies, nor to county superintendents of schools, to city officers not elected at a general state election, to town, village or school district officers." [R. S. 1909, sec. 5855.]

It is manifest that so far as any good or evil may befall from our holding this ambiguity either way none such can happen. For it makes no difference utterly in the practical working out of the contemplated primary election scheme whether we hold that declarations of candidacy of those desirous of running for judges of the Eighth Judicial Circuit, shall be filed with the Secretary of State or with the Board of Election Commissioners of the city of St. Louis. At least there is but the difference, perhaps, of a postage stamp between the one place of filing and the other. The crying need is to settle it once for all and fix thereby a rule of action, obviating that thick doubt, which we were told by counsel in argument, has heretofore impelled every candidate for judge of the circuit court of the city of St. Louis to file declarations both with the Secretary of State and in the office of the Election Commissioners, hoping thereby to find the right and proper place. Nevertheless, it ought to be settled by a logical and fair construction of the terms of the

troubling statute and not by brutally forcing a balance.

The statute, the ambiguous and contradictory terms of which have created the doubt mentioned, is as follows:

"No person shall file more than one written declaration indicating the party designation under which his name is to be printed on the official ballot, and all declaration papers shall be filed as follows: 1. For State officers, representatives in congress, courts of appeals and circuit judges, and those members of the senate and assembly whose districts comprise more than one county, in the office of the Secretary of State. 2. For officers to be voted for wholly within one county or in the city of St. Louis, in the office of the county clerk of such county or the office of the election commissioners of the city of St. Louis." [Sec. 5862, R. S. 1909.]

Even a casual reading of the above section discloses a serious conflict in its provisions, not however in the language used in the section, but in that language when applied to a well-known fact which we judicially notice because embodied in a general law, that is, that the Eighth Judicial Circuit is composed wholly of the city of St. Louis. We must ourselves notice this fact (State v. Pope, 110 Mo. App. 520; Alabama Ins. Co. v. Cobb, 57 Ala. 547; Railroad v. Hyatt, 48 Neb. 161; 1 Chamberlayne, Mod. Ev., sec. 669), and the rules of statutory construction require us to presume, naught else appearing, that the Legislature also held it in mind when the statute was passed. Moreover, the petition herein standing per stipulation as and for the alternative writ, so charges and on demurrer the truth of all matters well pleaded in the petition is admitted.

The above section requires by *specifically naming these offices* that all candidates for "state officers, representatives in congress, courts of appeals and *circuit*

*judges*" shall file their declarations of candidacy "in the office of the Secretary of State." (All italics are ours.) It further *provides generally* that all declarations for nomination "for officers to be voted for wholly within one county, or in the city of St. Louis," shall be filed in the office of the county clerk of such county, or in the office of the election commissioners of the city of St. Louis. Applying the rule of construction which requires the general provisions of a statute to yield to special provisions, where there is a conflict and where the general expressions in one part of a statute are inconsistent with the more specific provisions in another part of the statute (Rodgers v. United States, 185 U. S. 83; State ex rel. v. Hotel Co., 9 Mo. App. l. c. 453), we see that candidates for *circuit judges* are required by a specific provision naming this office to file their declarations with the Secretary of State. We may gather from the whole law a fairly consistent legislative intent to divide the officers into classes, pursuant to which classification (which was as consistent as the facts will permit) those officers who ordinarily are elected from more than one county are required to file declarations with the Secretary of State, while those who ordinarily are elected from a single county are required to file declarations with the county clerk. The only provision which is in any way inconsistent with this view of the legislative intent, is that relating to a state senator whose district is composed of but one county. This legislative intent, save and except that such inconsistency as to place of filing declarations of candidacy of certain candidates for State senator still inheres, is accentuated by a reference to section 5860 of the same act. Here candidates for nomination for the office of circuit judge are specifically and again by naming the office, required to pay the fee required to the treasurer of the State central committee, while again county officers are put into another

class and are required to pay such fee to the treasurer of the county central committee.

It was early announced as a rule of statutory construction in this State that effect shall if possible be given to the whole and every part of a statute. [Riddick v. Walsh, 15 Mo. 519; Macke v. Byrd, 131 Mo. 682; Scott v. Royston, 223 Mo. 568; State ex rel. v. Ryan, 232 Mo. 77; State ex rel. v. Harter, 188 Mo. 516; Strottman v. Railroad, 211 Mo. 227.] This rule is well-nigh universal in all jurisdictions and is without exception, save that the interpretation reached by the application of the rule should be reasonable and not out of accord with the legislative intent. [36 Cyc. 1128, and cases cited.]

Unless we say that candidates for nomination for circuit judge in the Eighth Judicial Circuit must file their declarations of candidacy with the Secretary of State and not with the Board of Election Commissioners of the city of St. Louis, we are compelled to excise as meaningless from section 5862 the words ''circuit judges.'' For we cannot reach this conclusion till we cut out and cast away these words from clause one of the above section. It is persuasive but concededly not in any manner decisive, that still another general classification was in the legislative mind. That is, that county officers (and city officers elected at general elections) were put in one class and all other officers (again, except a State senator from a single county) were placed in another class.

These considerations induce us, while conceding the existence of some argument for the other view, to believe that the rules of statutory construction and the great weight of reason lies with the view that declarations of candidacy for nomination for circuit judge of the Eighth Judicial Circuit should be filed with the Secretary of State, and so we hold.

II. This view brings us to a consideration of the constitutionality of the Non-partisan Judiciary Act, which is the chief question in the case and one to which the point discussed in paragraph one is only ancillary. If this act is invalid under the Constitution, or if, as urged upon us, essential features rendering it wholly nugatory have been repealed by the subsequent passage of a general act whose provisions (Laws 1913, sec. 1, p. 328) are in fatal conflict therewith, then the General Primary Election Law (Sec. 5855 to Sec. 5888, R. S. 1909) still governs the filing of relator's declaration of candidacy and our peremptory writ of mandamus should issue.

Statute: Title.

Upon the question of unconstitutionality a bare reference to the petition discloses that five separate reasons are set up wherein it is urged this act offends the fundamental law. We quote and let the pleader speak, thus:

"Relator further states that said so-called non-partisan judiciary law of 1913 is unconstitutional, invalid and void, because the same is in conflict with and violates:

"(a)   Article 4, section 28, of the Constitution of Missouri;

"(b)   Article 4, section 53, paragraph 32, of the Constitution;

"(c)   Article 4, section 53, paragraph 2, of the Constitution of Missouri;

"(d)   Section 9 of the Bill of Rights of the Constitution of Missouri;

"(e)   Article 4, section 53, paragraph 33, of the Constitution of Missouri."

Pretermitting the inevitable doubt, which we merely raise without deciding, whether an act of the Legislature of any State could possibly offend the organic law so diversely and we may say so nearly universally and unanimously, we will proceed to examine them. For convenience, and brevity, the view we now

hold of the case regarded, we consider first whether
the act contains more than one subject, and whether
that subject is clearly expressed in the title.   [Sec. 28,
art. 4, Constitution 1875.]   For convenience of refer-
ence we set out below the title of the act, the first
four sections thereof in full, and a brief analysis of
the substance of the other sections thereof.   These fol-
low:

"*An Act to provide for the manner of nominating
and electing candidates for judges of the circuit courts
in counties and cities having three hundred and fifty
thousand inhabitants or more and to establish a non-
partisan judiciary in said courts.*

"Section 1.  For the purpose of establishing a
non-partisan judiciary in state circuit courts in all
counties and cities in this State which now have and
such as may hereafter have a population of three hun-
dred and fifty thousand inhabitants or more, it is pro-
vided that at the general primary election held for
the purpose of nominating candidates for State, city or
county offices, each political party presenting a ticket
at such primary shall select from each ward within such
circuit or circuits one delegate to a nominating con-
vention to be held as hereinafter provided for each
one thousand votes or fraction thereof cast within said
ward for the candidate of such political party for the
office of Governor of the State at the last general elec-
tion, and there shall be printed or written upon all
ballots at such primary under the caption: 'for dele-
gates to non-political judicial convention' the name or
names of such proposed delegate or delegates to be
voted upon and the persons receiving the highest num-
ber of votes at such election shall be elected in this
order according to the number of votes received as
such delegates.  The persons so selected by all political
parties as such delegates shall meet in convention with-
in ten days after the holding of such primary election
and there nominate a candidate or candidates to be

voted on at the general election to fill every such judicial office to be filled within such circuit.

"Sec. 2. Names of candidates for said judicial offices so chosen shall be printed upon the general election ballot of each political party and following the names of such candidates upon the ballot shall be printed the office to be filled and nothing shall be printed or written or otherwise appear upon such ballot to indicate the political party, if any, to which any of such candidates belong or affiliate: It is further provided, that of the total number of such judicial offices to be filled not more than one-half the candidates therefor shall be nominated from any one political party: Provided, that when an uneven number of judicial offices are to be filled the odd candidate for such office may be nominated from any political party.

"Sec. 3. Except as otherwise provided in this act the provisions of the general laws of the State of Missouri relating to the nomination and election of candidates for public offices in cities and counties having more than three hundred and fifty thousand inhabitants are hereby made applicable to the nomination and election of candidates for said judicial offices.

"Sec. 4. Any person who desires to become a candidate for the office of such judgeship and otherwise qualified therefor as by the laws of this State provided, shall upon filing a petition with the board of election commissioners of such city or county signed by not less than five per cent of the total number of votes cast for the office of Governor at the last preceding general election declaring his intention to become a candidate for such office have his name printed upon the official ballot at such general election and all votes cast for such candidate shall be received, canvassed and counted in the same manner as provided for in respect to all other candidates upon such ticket."

There are two other sections, numbered 5 and 6, the substance of whose provisions is that appointments

to fill vacancies in said office shall be made without regard to the politics of the appointee, and repealing all acts and provisions in conflict. [Secs. 5 and 6, p. 335, Laws 1913.]

We do not think that the title of this act is subject to the criticism made against it by relator. Considering the last clause of this title first, we see that it sets forth in no unmistakable terms its paramount purpose, which is "to establish a non-partisan judiciary in said courts," that is to say, in circuit courts in counties and cities having 350,000 inhabitants or more. Turning to the body of the act we find the population limitation elaborated into applying the provisions of the act to "all counties and cities in this State which now have *and such as may hereafter have* three hundred and fifty thousand inhabitants or more." To find a fatal constitutional fault with this title for such a reason, that is, for that the body thereof is by the words italicized broader than the title, would be to take too strained and narrow a view of it, after we have resolved in its favor all reasonable doubts as the law requires us to do. [State v. Thompson, 144 Mo. 314; State v. Baskowitz, 250 Mo. 1. c. 88; State v. Watts, 111 Mo. 553.] But we need not again go into the reasons against this constricted view; it is *stare decisis*. Titles to acts which like this failed to specifically provide for other cities and counties to come into the class as they might attain the requisite population, nevertheless, have been held good. [Ex parte Loving, 178 Mo. 194; State ex rel. v. Wofford, 121 Mo. 61; State ex rel. v. Marion County Court, 128 Mo. 427; Lynch v. Murphy, 119 Mo. 163; State ex rel. v. Tolle, 71 Mo. 645; Ex parte Lucas, 160 Mo. 218.] Upon this point BARCLAY, J., said in the case of State ex rel. v. Marion County Court, supra:

"We think a fair reading of the proviso permits the interpretation that it is designed to apply to coun-

ties that may have the stated population at any time after the statute takes effect.

"That idea is not expressed in so many words; but, as the law is of continuing operation, and employs the present tense—'having' such a population—and a prospective effect is to be given to a statute, where its language does not exclude that construction, we consider that the interpretation above indicated is reasonable, and should be accepted to sustain the action of the lawmaking department.

"Where a statute is fairly susceptible of a construction in harmony with the Constitution that construction should be adopted, in obedience to several canons for the guidance of courts in dealing with this subject."

The use of the words "non-partisan judiciary" as the chief desideratum of this act was in itself a sort of signboard advising all and sundry of the revolutionary object of the enactment. That it did not in the title thereof specifically state that it repealed inconsistent acts and acts in conflict with its provisions, we do not consider as either important or controlling. Nor has our attention been called by the industry of learned counsel to any authority holding that the failure of the title of an act to recite that the act's provisions repeal other inconsistent and conflicting laws, will of itself condemn the act within the purview of the constitutional provision under consideration. Here the title, to an extent, may be said to have gone out of its way to recite that its main and cardinal purpose was "to establish a non-partisan judiciary." Inevitably then no member of the Legislature, acting within the presumption of knowledge of the condition of the law in such behalf then existing, can be said to have been misled by this title. If we are not to offend by muddy prolixity, it would seem that when the general purpose of an act is clearly set forth in its title, then all ancillary matters, germane to and not incon-

sistent with the general purpose and which are necessary, or necessary details, in order to carry out and give life and effect to such purpose, and without which its purpose would fail, are to be read by necessary implication into the title of the act. Something like this we find to be the rule, for it was said in State ex rel. v. Miller, 100 Mo. l. c. 445 (quoting from the still earlier case of Ewing v. Hoblitzelle, 85 Mo. 64), that:

" 'Where all the provisions of a statute fairly relate to the same subject, have a natural connection with it, are the incidents or means of accomplishing it, then the subject is single, and if it is sufficiently expressed in the title the statute is valid.' Substantially the same rule had been laid down in several previous cases. [City of St. Louis v. Tiefel, 42 Mo. 578; State v. Mathews, 44 Mo. 523; State v. Miller, 45 Mo. 495; City of Hannibal v. County of Marion, 69 Mo. 571; State ex rel. v. Mead, 71 Mo. l. c. 268.] The act in question fixes the number of directors in cities of over three hundred thousand inhabitants, prescribes their qualifications, and determines how and for what length of time they shall be elected. All these matters are closely related, and under the rule before stated constitute but one subject."

It is illuminating to note that the title of the act under discussion in the case of State ex rel. v. Miller, supra, was, "An Act fixing the number of directors in public school boards, in certain cities, and providing for election of such directors, and for districting said cities therefor." [Laws 1887, p. 272.] This act, like the instant one, contained six sections, and likewise like the instant one, the sixth section repealed all conflicting acts and parts of acts. [State ex rel. v. Miller, 100 Mo. l. c. 444.]

The object sought by this constitutional provision and the rule by which we may determine in a general way when that object and therefore when the letter

of the Constitution is violated, is thus stated in the case of St. Louis v. Weitzel, 130 Mo. 1. c. 616:

"The evident object of the provision of the organic law relative to the title of an act was to have the title, like a guideboard, indicate the general contents of the bill, and contain but one general subject which might be expressed in a few or a greater number of words. If those words only constitute one general subject; if they do not mislead as to what the bill contains; if they are not designed as a cover to vicious and incongruous legislation, then the title can stand on its own merits, is an honest title and does not impinge on constitutional prohibitions."

This rule has been quoted by this court many times with entire approval. [State ex rel. v. Weithaupt, 231 Mo. 1. c. 459; State ex rel. v. Assurance Companies, 251 Mo. 1. c. 294; State v. Distilling Co., 236 Mo. 1. c. 260; State v. Bengsch, 170 Mo. 1. c. 105; State ex rel. v. Vandiver, 222 Mo. 206; State v. Cantwell, 179 Mo. 1. c. 260.] In the case of State v. Cantwell, supra, at the page cited above, Fox, J., said:

"It was not necessary for the law-making power, in the title of the act, to designate the purposes of it. The evils it is intended to remedy may be deduced from the provisions of the act itself. That the title should contain but one subject and it should be clearly expressed, by no means can be construed that the title must designate the purposes of the act. The object to be obtained by the provision of the Constitution that there shall be but 'one subject and it shall be clearly expressed,' was 'to prevent surprise upon the lawmakers by the passage of bills, the object of which is not indicated by their titles, and also to prevent the combination of two or more distinct and unconnected matters in the same bill."

We need not pursue this point further at the expense of time and space. We feel no doubt that the title of this act is safely within the Constitution,

so far as sufficiency thereof is concerned, and we disallow the point to relator.

III. We come next to consider whether this is a special or local law, and if so whether as

**Special Law:**
**Non-partisan**
**Judiciary Act.**

relator most insistently and strenuously contends, it violates paragraph 32 of section 53 of article 4 of our Constitution.

We judicially notice the population of the city of St. Louis (State v. Anslinger, 171 Mo. 600; State ex rel. v. Miller, 100 Mo. l. c. 450; State ex inf. v. Evans, 166 Mo. 347; State ex rel. v. Ryan, 232 Mo. l. c. 91); as also, and under the provisions of the act under examination, the further fact that the provisions of this act at this time apply only to the city of St. Louis and to the Eighth Judicial Circuit. [State ex rel. v. Miller, supra; State v. Anslinger, 171 Mo. l. c. 610.] We are keenly mindful that *other things hereafter more in detail adverted to, being equal,* classification according to population has been held time and again to be sufficient to remove an act otherwise special, into the category of general laws. [State ex rel. v. County Court, 128 Mo. l. c. 442; State ex inf. v. Continental Tobacco Co., 177 Mo. 1; State ex rel. v. Bell, 119 Mo. 70.] But in order that an act, which is local and special and which applies only to one political subdivision of the State out of one hundred and fifteen, and to only one judicial circuit out of thirty-seven, may evade the ban of the Constitution that "in all other cases where a general law can be made applicable, no local or special law shall be enacted; and whether a general law could have been made applicable in any case is hereby declared a judicial question, and as such shall be judicially determined, without regard to any legislative assertion on that subject" (Par. 32, sec. 53, art. 4, Constitution), there must be something more than the mere outward seeming of a general law.

258 Mo.—36

Manifest beyond cavil it is that the above clause of our Constitution prohibits the passage of an act which, while wholly local, has artfully appended to it a sort of permitted classification, which normally would make the act, artificially at least, a general law. If the makers of our organic law, had by omitting the above clause, seen fit to confer upon the Legislature the power to determine the necessity of a local law, or the applicability of a general law, then the Legislature by means of the classification by population, or by other arbitrary classifications long held permissible, could have rendered practically nugatory all of the remaining thirty-two paragraphs of limitations contained in section 53. For we note that this section begins by providing that "the General Assembly shall not pass any local or special law" affecting some thirty-two or more specified matters. Under this language then the very first thing that the courts must determine is whether the act attacked *is local.* If the Legislature could utterly foreclose judicial inquiry merely by the expedient of appending to a local act one or more of the well settled and legally permissible earmarks of classification, the courts would never be able to get anywhere in such an inquiry, because if compelled to rule the question from outward signs alone the legal answer would always be that the act is not local and therefore not within the prohibited matters. We would have always to beg the question in order to escape this legal *cul-de-sac* and be compelled to assume that the act was local, instead of proceeding to demonstrate such fact judicially. For the defense always would be that, since the act carried both in title and in the body of the act a legally permissible classification, differentiating it as a general law from local laws, therefore and by that token it is a general law and so cannot be reached by the limitations in section 53 which prohibits local laws. Under a Constitution such as ours and having a clause which takes from the Legislature, and confers

upon the courts, the power to determine as a judicial question whether a law is local or special, and if special whether it was necessary or not, and even if necessary, whether a general law could have been made applicable, something more is required than the mere outward observance in an act of the arbitrary rules of classification by which, in a proper case, the question of whether a law is local or general is determined. [State ex rel. v. Miller, 100 Mo. 1. c. 448; Murnane v. St. Louis, 123 Mo. 1. c. 491; State v. Anslinger, 171 Mo. 600; Owen v. Baer, 154 Mo. 1. c. 468.] In the case of State ex rel. v. Miller, supra, at page 448, it was said:

"The rule that a statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things is a special law, is but a statement of a general rule and was only intended as such when laid down in Wheeler v. Philadelphia, 77 Pa. St. 338, as will be seen from the context of the opinion. A law which applies to certain school corporations only may be general, or it may be special. Much depends upon the particular matter of which the Legislature is treating. To make such a law general there must be some distinguishing peculiarity which gives rise to a *necessity* for the law as to the designated class. A mere classification for the purpose of legislation without regard to such *necessity* is simply special legislation of the most pernicious character and is condemned by the Constitution. Mere differences which would serve for a basis of classification for some purposes, amount to nothing in a classification for legislative purposes, unless such differences are of a character as, in the nature of things, to call for and demand separate laws and regulations. The underlying principle is well stated by Chief Justice BEASLEY, in State ex rel. Richards v. Hammer, 42 N. J. L. 435, where he says: 'But the true principle requires something more than a mere designation by such characteristics as will serve to classify, for the

characteristics which thus serve as the basis of classi-
fication must be of such a nature as to mark the ob-
jects so designated as peculiarly requiring exclusive
legislation.  There must be a substantial distinction,
having a reference to the subject-matter of the pro-
posed legislation, between the objects or places em-
braced in such legislation and the objects or places
excluded.  The marks of distinction on which the classi-
fication is founded must be such, in the nature of things,
as will, in some reasonable degree, at least, account
for or justify the restriction of the legislation.  Prin-
ciples of this sort can be best elucidated by examples.
I have already given a sample of a merely arbitrary
classification, founded on no causal relation between
the subject-matter of such legislation and the things so
classified.  A sample of the other, or legitimate, kind,
would be signified, in a law that should give to all
cities in the State situated on tidewater the privilege
of using such waters in connection with their sewers.' ''

But we are not here compelled to judicially deter-
mine the necessity of a special law, or the applicability
or lack thereof, of a general law providing for the
nomination and election of circuit judges.  The Legis-
lature when it passed the general state-wide primary
election law in 1909 (Laws 1909, p. 481), resolved any
existing doubt on that point in favor of the feasibility
of such a law for the whole State.  On this proposi-
tion as to when and under what circumstances the
question of the applicability of a general law to the
situation to be met is resolved beyond cavil in favor
of such applicability, a well-known law writer says:
''If a general law exists which is applicable to a sub-
ject, the question whether such a law can be made ap-
plicable is resolved.  The Legislature has by the enact-
ment of a general law practically decided the question.
Hence, if, while such a general law is in force, a special
or local law is passed affecting the same subject and
modifying the general law, the question of its validity

is judicial; it will be held invalid in the case supposed, for, an applicable general law being in existence, it is no longer a question whether such a law can be made applicable; therefore the special or local law is prohibited." [1 Lewis's Sutherland on Statutory Con. (2 Ed.), sec. 191.]

Upon the point of the validity of a classification according to population, though upon a phase differing slightly from that here under discussion, but apposite thereto, nevertheless, this same writer says: "The reason upon which classification is founded is that cities of widely different population have different needs and conditions which render necessary corresponding differences in their corporate powers and in the number, character, powers and duties of the officers by whom the municipal government is to be conducted and its necessities provided for. Where the reason ceases to operate classification by population ceases to be valid." [1 Lewis's Sutherland Stat. Con. (2 Ed.), p. 388.]

That special or local acts may be constitutionally valid when concededly applicable to the city of St. Louis alone and though such acts relate to primary and general elections in that city, is clear; for this court has several times had occasion to pass upon such laws and has held them good. [State ex inf. v. Fleming, 147 Mo. 1; State ex rel. v. Mason, 155 Mo. 486.] But having now upon the statute books such laws for that city (Cf. Secs. 6013 et seq., R. S. 1909; Secs. 6189 et seq., R. S. 1909) providing methods of holding primary elections (when not affected or abrogated by the general primary election law mentioned, supra); as also special laws providing for the registration of voters and for the holding of general elections therein (See Sec. 5810, R. S. 1909); as well as, having applicable to that city and in full force there the provisions of sections 5855 et seq., so far as the terms of the latter law, as set out in said section 5855, extend,

it is difficult to see the constitutional phase of necessity for the non-partisan judiciary act. Nor is it difficult to see that a non-partisan judiciary act may be as readily provided by a general law for the whole State as for the city of St. Louis alone.

IV. In addition to this vice, the Non-Partisan Judiciary Act violates another cardinal rule in another ordinarily valid classification. For while we have held that laws affecting St. Louis only may be passed to govern and regulate primary elections and general elections held there (State ex inf. v. Fleming, supra; State ex rel. v. Mason, supra), we have never held, so far as we have been able to find, that such a special law could be passed for that city, to govern the filling of only one office and the selection and election of but one sort of officers therein; *when at the same time there are in force in said city other laws providing other methods of filling all other offices.* "The governing rule," said Judge MACFARLANE, "has been that a statute which relates to persons and things *as a class* is a general law, while a statute which relates to particular persons or things *of a class* is special." [State ex rel. v. Tolle, 71 Mo. l. c. 650; State ex rel. v. Herrmann, 75 Mo. 354; Lynch v. Murphy, 119 Mo. 163; State ex rel. v. Marion County Court, 128 Mo. 427.] Here an act concededly affecting alone the city of St. Louis, instead of legislating upon the single subject of nominations for all officers, or of primary elections for all officers, or of general elections for all officers to be chosen at the April elections or at the November general elections, as is permissible (see cases cited supra), selects out of that subject or class of things one particular thing, viz., a candidate for circuit judge. We do not think we need to pursue the subject further. For illustration: If an act were passed prohibiting the killing of wild ducks between

*Margin note: Special Law: Applicable to Only One Office.*

the 15th day of January and the first day of November in all counties in this State which now contain or which may hereafter contain 19,448 inhabitants, we could mayhap judicially notice and ascertain that it applied to New Madrid county. It would have some of the indicia of a general law, but would any one contend for a minute that such an act would not violate paragraph 32 of section 53, of article 4, forbidding the passage of a local law where a general law may be made to apply (State v. Anslinger, supra), or that it would not likewise violate the provisions of our Constitution forbidding "class legislation?" Yet the Non-Partisan Judiciary Act is in practically every respect similar in constitutional defects to the supposed case. As we would hold in the case supposed by the illustration, we so hold in this.

We reach this conclusion with the utmost regret, since the subject sought to be accomplished by this act is most commendable and one devoutly to be wished. That the judiciary of the State, who sit in judgment upon the lives and liberty and property of all of the citizens, might with much bettering of the law's enforcement be lifted out of politics and be no longer required to be beholden to any party for their places, is conceded almost of all men. But conceding the need (and personally for myself admitting sympathy with such a movement), should we say by solemn inference and in the very face of the Constitution that this need is larger in the city of St. Louis' than it is in Kansas City, or Springfield, or Joplin, or Camden county? Ought we—still in the very face of the Constitution—to work a great reform if so great need for reform exist, in spots? Again, if there be so crying a need for a remedy (of which we express no opinion), it is yet poor surgery I opine to cut off a single finger in the hope of curing a crooked elbow.

Other questions are raised, and other attacks for constitutional invalidity are urged, but having reached

the conclusion on the grounds stated that the act is unconstitutional, we need not here and now pass upon these other questions mooted; contenting us with saying that some of them raised by the petition, but not herein discussed, seem to present seriously debatable questions.

It results that the peremptory writ of mandamus prayed for herein should issue. Let this be done. *Woodson, Brown* and *Walker, JJ.*, concur; *Lamm, C. J.*, and *Graves, J.*, concur in paragraphs one and two and in the result; *Bond, J.*, dissents as to paragraphs one, three, four and to the result.