## MINERS' BANK v. EDWARD M. CLARK, Appellant.

### Division Two, June 28, 1913.

1. **SUIT ON SPECIAL TAX BILLS: Prima-Facie Case: Burden of Proof.** When, in a suit upon special tax bills, the bills themselves are regular upon their face, they make out a prima-facie case for plaintiff. That prima-facie case is subject to rebuttal, but the burden is upon defendant to show the defect in the proceedings or work rendering the tax bills void.

2. ————: **Width of Street: Plans and Specifications: Finding of Trial Court.** The resolution of the city council declaring the street improvement necessary, the ordinance providing for the improvement, the notice to contractors for bids on the work, and the contract for the work, each and all stated that the work should be done according to plans and specifications on file in the city clerk's office. The evidence shows that the plan was filed in the office of the city clerk showing that the roadway portion of the street was twenty-four feet in width, and that the improvement made conformed to that dimension. Appellant's abstract of the record does not contain a copy of the plan, but the trial court found that the plan was properly filed, that it "fixed the width of the improvement with sufficient certainty," and that the work was substantially performed by the contractor. *Held*, that, absent a copy of the plan from the abstract, the finding of the trial court cannot be reviewed, and it will be presumed that the court properly and correctly found as stated.

3. ————: ————: **Material Designated: Engineer's Power to Change.** Tax bills based upon a general ordinance for macadam work are not, in the circumstances of this case, void because the ordinance reads, in part: "The macadam course having been finished, the space between stones shall be filled with clean mill tailings, *or such other material as may be directed by the city engineer or street committee.*" The evidence shows

that mill tailings were used in fulfilling the present contract, and it does not show that any attempt was made by the city engineer or street committee to change the material from mill tailings, and in the absence of any evidence tending to show that the contractors were misled in any way, or that their bids were based upon other materials, it is fair to presume that the bids were based upon mill tailings, which is the only material that the ordinance specifically designated for the binder course.

4. ————: Sec. 9255, R. S. 1909: Protest by Resident Owners: Constitutional Question.   Section 9255, R. S. 1909, providing that "if a majority of the resident owners of the property liable to taxation therefor (for street improvements), at the date of the passage of the resolution, who shall own a majority of the front feet owned by residents of the city abutting on the street, . . . shall not, within ten days thereafter, file with the clerk of the city their protest against such improvements, then the council shall have power," etc., to let the contract, is not unconstitutional because it gives the privilege of protesting to resident and not to non-resident owners.

5. ————: Cities: Contracting Away Power to Levy Special Assessments.  Cities of the third class cannot contract away their power to levy special assessments for street improvements and thereby create an exemption from such assessments.

Appeal from Jasper Circuit Court.—*Hon. David E. Blair*, Judge.

AFFIRMED.

*C. V. Buckley* for appellant.

(1)   The work to be done, that is in this case, the space to be covered with macadam, must be specified; not only the length but the width and when it is specified it must be done as specified.   If a less space than the contract calls for is actually covered by the contractor the tax bills are void.   City v. Etterson, 120 Mo. App. 215; Grading Co. v. Holden, 32 Mo. App. 490; Cole v. Shrinka, 105 Mo. 303; Brady v. St. Joseph, 84 Mo. App. 399; Kansas City v. O'Conner, 8 Mo. App. 655; West v. Porter, 89 Mo. App. 150; Louisiana v. Shaffner, 104 Mo. App. 101.   An ordinance

for construction of sewer must contain plans and specifications or refer the public to some place where they may be found or the ordinance is void. McCormick v. Moore, 134 Mo. App. 669; Dickey v. Holmes, 109 Mo. App. 721. (2) Ordinances cannot delegate the authority to select the material to be used in a street improvement or any part thereof. It was violated in this case by allowing the engineer or the street committee to select the kind of sand to be used in the top, filler or binder course. City v. Eddy, 123 Mo. 563; Independence v. Knoepker, 134 Mo. App. 601. A city ordinance cannot direct sidewalks to be built of wood, brick or stone. Rich Hill v. Donnon, 82 Mo. App. 386. It cannot be said that the material selected is just as good or that it was immaterial. It was held that where the ordinance required crushed river gravel, if the river gravel used was not crushed, the tax bills were void. Kansas City v. Askew, 105 Mo. App. 84. The city cannot leave to engineer part of street to be improved. Council cannot delegate its (legislative) functions to a ministerial officer. Ramsey v. Field, 115 Mo. App. 620. (3) The appellant properly and in time protested against the improvement in question. The city had no power, in the face of such protest, to order the improvement. A majority of the front feet owners protested. The appellant at the time owned it all. Sec. 9255, R. S. 1909. (4) It was illegal for the city to order the improvement at the expense of the appellant. The city had agreed to do it and therefore was estopped by the deed to this street made to it by appellant. A city has power to acquire public highways within its limits by express grant. Wythe v. St. Louis, 153 Mo. 80. A city can make any contract for property or about any subject within its express or implied powers. 15 Am. & Eng. Ency. Law, p. 1080, sec. 14. The acquirement and control of its streets by a city is one of its principal privileges and if it cannot procure land for streets by

grant from its owners, it can acquire such land by con-
demnation. Constitution, art. 2, sec. 21; Sec. 9261,
R. S. 1909. Joplin, being a city of the third class, has
power and authority to improve its streets at its own
expense; and is not limited in the doing of said im-
provements, to taxing the same to the adjoining prop-
erty owners. Sec. 9254, R. S. 1909. A city may be
charged with improvements whether it has the money
in its treasury or not; whether it has appropriated it
or not. If it has the power to make the contract it is
all that is required. Barber & Co. v. St. Joseph, 183
Mo. 451. It is estopped to deny any contract it has
power to make. Unionville v. Martin, 95 Mo. App.
38. A city may buy land for any legitimate or au-
thorized purpose. Vaughan v. Greencastle, 104 Mo.
App. 206; Ely v. St. Louis, 181 Mo. 723; 15 Am. &
Eng. Ency. Law, p. 1080, sec. 14. A case very much
in point is where a city was held bound by its contract
to maintain bridges across a mill race within its lim-
its. State ex rel. v. Cowgill M. Co., 156 Mo. 620. The
cases in this State that hold a city, or the State, can-
not exempt persons from taxation, or even from spe-
cial assessments is based on the doctrine that it is
*ultra vires* of a city, because it would proportionally
increase the burden of taxation upon others if some
were returned; but that condition does not exist here.
Here there is nobody but the city and Clark con-
cerned; and we have seen from the above authorities
that a city is charged with its obligations where no
other person's rights are violated; where no unjust
or unequal burden is thrown upon any other citizen.

*George J. Grayston* and *Haywood Scott* for re-
spondent.

(1) Sufficiency of specifications of work to be
done. The width to be improved need not be speci-
fied when shown by the plan. Hamilton on Special

Assessments (1 Ed.), p. 359, sec. 407; Gafney v. San Francisco, 72 Cal. 146; Hedonburg v. Chicago, 44 N. E. 395. Reference to plans and specifications in resolution and ordinance is sufficient. Page & Jones on Taxation by Assessment (1 Ed.), sec. 833, p. 1418; sec. 849, p. 1446; Roth v. Hax, 68 Mo. App. 287; Galbreath v. Newton, 30 Mo. App. 381; Whitworth v. Webb City, 204 Mo. 598; Akers v. Kolkmeyer & Co., 97 Mo. App. 529; Paving Co. v. Ullman, 137 Mo. 571. "An ordinance or notice of an improvement is sufficient where it describes generally the kind of improvement proposed to be made and refers for a specific description to maps, plans, specifications or other detail thereof on file in a public office, accessible to interested parties." Walsh v. Bank, 139 Mo. App. 647; Hamilton on Special Assessments (1 Ed.) p. 304, sec. 358; Page and Jones on Assessments (1 Ed.), sec. 833, p. 1418; Clinton v. Portland, 26 Ore. 419; Greensburg v. Zoller, 60 N. E. 1007. Ordinance 2050 and the plan furnished all the plans and specifications necessary for such work. The trial court expressly found same to be sufficient, and as appellant has not furnished the plan in his record this court is not in a position to hold same insufficient. Probert v. Investment Co., 155 Mo. App. 344. (2) De Minimus. The ordinance provided that the 4-inch layer of macadam should consist of stone not to exceed two inches in diameter, and that it should be thoroughly consolidated by rolling with a 15-ton roller. The spaces then existing should be filled with mill tailings, or such other material as might be designated by the city engineer or street committee. Minor matters may be left to the discretion of the officials in charge of such work. Swift v. St. Louis, 180 Mo. 96; Gibson v. Owen, 110 Mo. 455; Guyer v. Rock Island, 215 Ill. 144. Another view of the matter is: The ordinance provided that those spaces should be filled with mill tailings or such other material as might be designated by the

engineer or street committee. The attempt to delegate follows a provision, which is otherwise certain, as an alternative. If the attempt to delegate is ineffectual, then that provision should be disregarded as surplusage. Thus the requirement as to the use of mill tailings would be rendered certain and the ordinance would still be complete. Railroad v. Jacksonville, 114 Ill. 563. Mill tailings were in fact used. (3) Appellant's contention that the statute, limiting the right to protest against such improvements to resident property owners, is unconstitutional, has been decided against him by this court and by the Supreme Court of the United States. Buchan v. Broadwell, 88 Mo. 36; Field v. Asphalt Co., 194 U. S. 618. (4) The provision in the deed from appellant to the city of Joplin, which he claims exempts his property from taxation, was void for the reason that the city was not authorized to waive its right to improve its streets in either manner provided by law. Vrana v. St. Louis, 164 Mo. 146; Noblesville v. Railroad, 130 Ind. 1; City v. Railroad, 19 Wash. 518; Elliott on Roads and Streets (2 Ed.), sec. 148, p. 156. Richards v. Cincinnati, 31 Ohio St. 506, holds that in such cases the grant is valid but the condition void.

WILLIAMS, C.—This is a suit upon eight special tax bills issued by the city of Joplin, a city of the third class, to the contractor for grading and macadamizing the roadway portion of Fifth street, from the east line of School street to the west line of Spring Park Addition, in said city. The tax bills were sold and assigned by the contractor to the plaintiff bank, respondent herein. Trial was had in Division Two of the circuit court of Jasper county before the court, without a jury, resulting in a judgment in favor of plaintiff on each of said tax bills, from which judgment defendant

*Suit on Special Tax Bills.*

(certain constitutional questions being involved) has appealed to this court.

Plaintiff introduced in evidence said special tax bills, which appear to be regular in form. Defendant, the owner of the lots against which the special tax bills were issued, thereupon introduced evidence in support of his answer pleading certain defenses. No question is raised as to the sufficiency of the pleadings, and there is little, if any, dispute about the facts. It is therefore unnecessary to deal with the facts at length here, but such of the facts as are necessary to a complete understanding of the errors assigned will be stated in the course of the opinion.

The special tax bills introduced in evidence were regular upon their face, and therefore made out a

prima-facie case for plaintiff. The prima-facie

**Prima Facie Case.** case thus made is subject to rebuttal, but the burden is upon defendant to show the defect in the proceedings or work rendering the tax bills void.

I. Recognizing the above burden, appellant first contends that the tax bills are void because the width of that portion of the street to be graded

**Specifying Width of Street.** and macadamized, designated as the "roadway," was not specified or definitely fixed by ordinance or proper plans and specifications. The resolution of the city council declaring the improvement necessary, the ordinance providing for the improvement, and the notice to contractors for bids on the work, and later the contract for the work, each and all state that the work shall be done according to *plans* and specifications on file in the city clerk's office. The evidence shows that the plan was filed in the office of the city clerk showing that the roadway portion of the street was twenty-four feet in width, and that the improvement made conformed to that dimension. Where the resolution, ordinance, notice to

contractors and the contract itself, refer to a plan on
file in the city clerk's office, that is sufficient, providing
the plan so on file sufficiently designates the different
dimensions of the improvement to be made. [Asphalt
Paving Co. v. Ullman, 137 Mo. 543, l. c. 571; Construc-
tion Co. v. Coal Co., 205 Mo. 1. c. 68; McCormick v.
Moore, 134 Mo. App. 669, l. c. 678; Laws 1907, pp. 103-
104.] Appellant's abstract of the record does not con-
tain a copy of said plan, but the trial court found
that the plan was properly filed in the city clerk's
office, that it "fixed the width of the proposed improve-
ment with sufficient certainty," and that the work was
substantially performed by the contractor. Absent a
copy of the plan from the abstract, we cannot review
the court's finding in that regard, but will presume
that the court properly and correctly so found.

II. Appellant's next contention is
Selection of
Material:
Notice to
Bidders.
that the tax bills are void because the
ordinance delegated to the city engineer
the authority to select part of the mate-
rial to be used. That portion of the ordi-
nance thus attacked reads:

"The macadam course having been finished, the
space between stones shall be filled *with clean mill
tailings, or such other material as may be directed
by the city engineer or street committee.*"

The specifications for the work provide, first, that
the roadway be excavated to a depth of twelve inches
below the established grade line, and that into this
excavation shall be put an eight-inch layer of stones
four inches or less in diameter, which must be con-
solidated by rolling with a steam roller. Upon this
foundation layer must then be placed a four-inch layer
of macadam, consisting of stones two inches or less in
diameter, which must likewise be thoroughly rolled.
After this comes the binder course above referred to,
which is applied for the purpose of filling any spaces

remaining between the stones after the rolling process, and to make the surface of the roadway smooth and suitable for public travel and public use.

The evidence shows that "mill tailings" were used for said purpose in the present contract, and hence we have not before us for determination the question whether or not the tax bills would be void had the city engineer or street committee directed the use of some other material, and the material so directed had been used by the contractor instead of mill tailings. Appellant further insists, however, that by reason of the specification above mentioned competitive bidding is prevented, in that the contractor could not know in advance what material would be used for the binder course.

A strict construction of the specification, in accordance with the rules of punctuation and English grammar, would be that the city engineer or street committee.is given no right to determine whether mill tailings shall or shall not be used, but their option is limited to a choice among other materials if mill tailings are not used. The ordinance containing the specification was passed as a general ordinance, intended to cover work of this kind whenever done. We think it would be a somewhat forced and unfair construction to say that said ordinance undertook to delegate absolutely to the city engineer or street committee the right to change the material from mill tailings to some other material after notice was published calling for bids, or even before calling for bids, without directing the attention of the bidding public thereto by having such new choice ratified by act of the city council and mention thereof in the notice advertising for bids. In the absence, then, of any public notice of any such change the contractors, in preparing their bids, had the right to assume that mill tailings would be used in the binder course, and in fact they had no right to assume that any other material would be used.

The evidence does not show that any attempt was made at any time by the city engineer or street committee to change the material from mill tailings to some other material, and in the absence of any evidence tending to show that the contractors were misled in any way, or that their bids were based upon other materials, it is fair to presume that the bids were based upon mill tailings, which is the only material which the ordinance specifically designated for the binder course.

III. Within ten days after the publication of the resolution of the council declaring the improvement necessary to be done, appellant filed with the city clerk his written protest against said improvement. It is admitted by the parties that at the date of the passage of said resolution appellant owned all the property abutting upon that portion of the street sought to be improved, and that on said date appellant was not a resident of the city, but was a resident of the State of Illinois and a citizen of the United States. The statute in force at the time—Laws 1907, p. 103, now section 9255, Revised Statutes 1909—does not provide for a protest by non-residents, but provides that "if a majority of the resident owners of the property liable to taxation therefor, at the date of the passage of such resolution, *who shall own a majority of the front feet owned by residents of the city abutting on the street,* . . . shall not, within ten days thereafter, file with the clerk of the city their protest against such improvements, then the council shall have power," etc., to let the contract for such work.

*Sec. 9255, R. S. 1909: Constitutional.*

Appellant insists that since the above statute gives to the resident owner, and not to the non-resident owner, the right of protest, the statute is special legislation and violates section 53, article 4, of the Constitution of Missouri, and that said statute also vio-

lates the Fourteenth Amendment to the Federal Constitution.

A statute is not special or class legislation if it apply to all alike of a given class, provided the classification thus made is not arbitrary or without a reasonable basis. [State v. Julow, 129 Mo. 163; White v. Railroad, 230 Mo. 287, l. c. 305-306.] "The courts, before pronouncing a statute void, demand to be satisfied beyond a reasonable doubt of its vice, so this court has announced, 'Both upon principle and authority the acts of the Legislature are to be presumed constitutional until the contrary is clearly shown; and it is only when they manifestly infringe on some provision of the Constitution that they can be declared void for that reason. In case of doubt, every possible presumption not directly and clearly inconsistent with the language and subject-matter, is to be made in favor of the constitutionality of the act.' [State ex rel. v. Railroad, 48 Mo. 468; State v. Able, 65 Mo. 357.]" [Humes v. Railroad, 82 Mo. l. c. 232; Hamman v. Cen. Coal & Coke Co., 156 Mo. 232, l. c. 242.]

The statute in question gives the privilege of protesting to all persons living within the city and owning property abutting the street sought to be improved. In the case of Buchan v. Broadwell, 88 Mo. 31, it was held that the charter of Kansas City, providing that upon a "petition of residents of Kansas City who own a majority of front feet on a street to be graded," the council could order the same to be graded at the expense of the property owners, was not unconstitutional on the ground that it discriminated against the non-resident property owners, the court further holding that it was within the legislative power "to have authorized the council to have ordered the grading of streets at the expense of the property owners without any petition." And as to the statute under consideration, it could not be properly said that the Legislature acted in a manner arbitrary or unrea-

sonable in restricting the right of protest to the resident owners—a class having not only a pecuniary interest in the land affected, and in the hoped-for unearned increment of the future, but also possessing a more accurate knowledge of the public need, and naturally taking a greater pride and interest in the municipality's progress and general welfare, thereby constituting a class whose judgment, thus tempered by such diversity of interest, would no doubt serve as a safe check upon the acts of the "city fathers" rather than as a lock upon the wheel of municipal progress, such as might well be presumed to result were the matter left within the control of persons residing without the city. "Control" is here used advisedly, because the point here raised could not be involved unless the non-resident protesters, either by themselves or acting in conjunction with a minority of resident owners, should be sufficient to constitute a majority.

Appellant further contends that said statute violates the Fourteenth Amendment to the Constitution of the United States. However, as to the Federal question thus raised, it is sufficient to say that the exact point has been directly passed upon by the United States Supreme Court in Field v. Barber Asphalt Paving Co., 194 U. S. 618, and decided adversely to appellant's contention. That decision is controlling here.

IV. On June 21, 1901, by quit-claim deed, the defendant conveyed for public street purposes the land embraced by the street here involved, as well as other streets, to the city of Joplin. Said deed contained the following provisions: "And it is hereby agreed and understood that when said streets are brought to grade and macadamized, said work is to be done at the expense of the city. . . . It is further understood that the

**Cities: Cannot Contract Away Right to Levy Special Assessments.**

city shall begin the improvement of said streets within a reasonable length of time, and complete the same on or before November the first, 1901, or forfeit all rights to the above described streets, except those graded.''

The deed was accepted by resolution of the city council. The city did nothing toward grading or mac‑adamizing the street until the proceedings instituted in December, 1907, which form the basis of the tax bills sued upon. On April 30, 1906, the defendant platted the addition to the city of Joplin known as Central Addition, embracing the street and lots here involved, and formally and unconditionally dedicated the streets, including the street here involved, and alleys thereof to the public; which dedication and plat were by ordinance enacted by the city council of Joplin duly accepted on the first day of May, 1906. Appellant contends that by reason of the condition contained in the quit-claim deed from Clark to the city, dated June 21, 1901, the city had no right to improve said street at the expense of Clark, and that said deed being of record the contractor was charged with notice thereof, and the tax bills are therefore void. The determination of the proposition turns upon the answer to the following question: Did the city, by accepting the deed from Clark in 1901, contract away its right to later order said street improved at the expense of the abutting property owner, even though the grantor in said deed be the property owner when the improvement is later made? Unless the law constituting its charter gives such right, a city cannot contract away its right and power to levy special assessments for street improvements, and thereby create an exemption from such assessments. [Vrana v. City of St. Louis, 164 Mo. 146, where the exemption was attempted in the dedication; Rackliffe & Gibson v. Duncan, 130 Mo. App. 695, where the exemption was attempted in the deed conveying the street to the city.] The charter of cities of the third class does not give such power. In

fact, the legislative right to give such power might well be doubted—a point, however, which we do not decide.

It is true, as asserted by appellant, that a city of the third class may acquire title to land for street purposes; but we know of no rule which authorizes the city to surrender, as the purchase price of a street, its right to order that street improved in any manner authorized by law. If, therefore, the city did not dispose of its right to order the street improved in the manner exercised in the present suit, it could by properly exercising that power issue valid special tax bills. The quit-claim deed, properly construed, vested the title to the streets in the city, subject to be divested later if the city failed to carry out the condition subsequent, should the grantor duly exercise his right of forfeiture on account of such failure. But such provision only goes to the question of title. As to what was the condition of the city's title in and to said street as a public street, after accepting said quit-claim deed, and prior to May 1, 1906, it is not necessary to decide, for all will agree that the title to said street vested in the city absolutely by virtue of the dedication of the latter date, and that the street was a public street when the proceedings were instituted for the grading and macadamizing thereof. And the city having the power and right to proceed in the way it did, and having proceeded regularly, and the contractor having duly performed his contract, it follows that the special tax bills are valid.

The judgment is affirmed. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion by WILLIAMS, C., is adopted as the opinion of the court. All the judges concur.