# THE STATE v. VITO TALLO, Appellant

### Division Two, June 5, 1925.

1. **CONSTITUTIONAL LAW: Act of 1923: Unlabeled Beers: Title.** The title of the Act of 1923, Laws 1923, page 239, relating to the manufacture, possession, transportation and sale of intoxicating liquors, and regulating the sale of ethyl alcohol and wine for medical purposes, prescribing the terms upon which places for the sale of soft-drinks may be conducted and providing for the issuance and service of search warrants for the enforcement of the act, does not contain more than one subject, and Section 9 thereof making it unlawful to sell near-beer, imitation beer or other liquid or so-called soft-drinks "having the appearance, odor and taste of beer" unless the same "be sold or offered for sale in the original bottle, keg or barrel in which same was bottled by, and bearing the original label and full name of, the brewer or manufacturer thereof," is germane to the general subject of the title. The purpose of said Section 9 was to prohibit the subterfuges and disguises resorted to by persons seeking to overreach the prohibition laws, and such purpose is contemplated in the title.

2. ————: **Special Law.** Nor is said Act of 1923 a special law, and it does not violate either Clause 32 of Section 35 or Clause 26 of Section 53 of Article 4 of the Missouri Constitution, or Section 1 of the Fourteenth Amendment.

3. **INSUFFICIENT EVIDENCE: Unlabeled Beer: Sale: Appearance, Odor and Taste.** Where there is no testimony showing or tending to show the appearance, odor or taste of beer, or that the liquid obtained by the officers and charged to have been sold by defendant had the appearance, odor or taste of beer, a conviction cannot stand upon an information charging that defendant unlawfully and wilfully sold and offered for sale, in bottles, kegs and barrels, liquid having the appearance, odor and taste of beer, without bearing the original label and full name of the brewer or manufacturer thereof.

4. ————: **Presumed Knowledge of Trial Court: Presumption of Innocence.** A judgment of conviction cannot be affirmed on the ground that the trial court should be presumed to know the things required to be proven, although there is no substantial evidence of defendant's guilt of the offense denounced by the statute. There is no such presumption. On the contrary, the defendant is presumed to be innocent throughout the trial, and it devolves upon the

State to show that he is guilty of the things charged against him beyond a reasonable doubt.

Citations to Headnotes: Headnote 1: Statutes, 26 Cyc. p. 1035. Headnote 2: Statutes, 36 Cyc. p. 998. Headnote 3: Intoxicating Liquors, 33 C. J. sec. 510. Headnote 4: Criminal Law, 16 C. J. sec. 1008.

Transferred from St. Louis Court of Appeals.

REVERSED AND REMANDED.

*Lena Frank* and *Ernest F. Oakley, Jr.* for appellant.

(1)   The title of the act is insufficient because it contains more than one subject; because the subjects of the act are not clearly expressed in the title, and because there is no reference in the title to the provisions contained in Section 9 of the act, which attempts to make it unlawful to sell or offer for sale liquid having the appearance, odor and taste of beer without original labels on the container, and such provisions are not germane to the subjects mentioned in the title.   Sec. 28, Art. 4, Constitution of Missouri; State v. Crites, 277 Mo. 194; State ex rel. Neidermeyer v. Hackmann, 292 Mo. 32; State v. Koontz, 275 Mo. 478; State v. Sloan, 258 Mo. 313; State v. Rawlings, 232 Mo. 544; City v. Fulks, 207 Mo. 26; City v. Wortman, 213 Mo. 131; State v. Great Western C. & T. Co., 171 Mo. 634; State ex rel. v. Gordon, 233 Mo. 383; State ex rel. v. Revelle, 257 Mo. 538.   (2) The act is a special law, although a general law might have been made applicable, and it therefore violates Subdivision 32 of Section 35 and Subdivision 26 of Section 53 of Article IV of the Constitution of Missouri, in that it grants a special or exclusive right, privilege or immunity to other corporations, associations or individuals and unlawfully discriminates against the defendant. And the said act also violates Section 1 of the Fourteenth Amendment to the Constitution of the United States in that it unlawfully abridges the privileges and immunities of this defendant and denies to this defend-

ant the equal protection of the laws. Lige v. Railroad Co., 204 S. W. 510; State v. Empire Bottling Co., 261 Mo. 306; State ex rel. v. Railroad Co., 246 Mo. 512; State v. Miksicek, 225 Mo. 561; Woolley v. Mears, 226 Mo. 41; State ex rel. v. Ashbrook, 154 Mo. 375; State v. Walsh, 136 Mo. 405; State v. Thomas, 138 Mo. 100. (3) The act prohibits the sale or offer for sale of liquid that has the appearance, odor and taste of beer, without certain labels being thereon, and thus deprives defendant of property without due process of law, contrary to the provisions of Section 30 of Article II of the Constitution of Missouri and contrary to the provisions of Section 1 of the Fourteenth Amendment of the Constitution of the United States. State v. Layton, 160 Mo. 474. (4) Even if the act be held constitutional in every respect, yet, in no event, can there be a conviction of defendant without proof that the liquid purported to have been sold by him had the appearance, odor and taste of beer.

*Robert W. Otto,* Attorney-General, and *James A.* Potter, special assistant Attorney-General, for respondent.

(1) The evidence offered by the State was sufficient to justify the submission of the case to the court. Appellant contends that there was no evidence offered to the effect that the liquid offered in evidence had the appearance, taste, or odor of beer. The liquid offered in evidence spoke for itself and it is to be presumed that the trial court performed his duty and examined, viewed, tasted and smelled of this liquid; otherwise the trial court could never have arrived at the conclusion that it had the appearance, taste and odor of beer. There was no evidence introduced at the trial to show what beer itself looked, tasted or smelled like, but it is to be presumed that the trial judge in the city of St. Louis knew the appearance, taste and odor of real beer. This court is not justified in shutting its eyes or closing its ears to things of common knowledge. 15 R. C. L. p. 1132; 10

R. C. L. pp. 880 to 882; Hackworth v. Mo. So. Ry. Co., 227 S. W. 1032; Valley Spring Ranch Co. v. Plagmann, 220 S. W. 1. (2) The title to the intoxicating liquor act is sufficiently broad to include the subject of soft drinks and soft drink parlors. The title to the act specifically refers to soft drink stands, and that section involved in this case dealing with beverages which have the odor, appearance and taste of beer is so closely related to the subject of intoxicating liquors that it is germane thereto. State v. Hanson, 234 Mo. 583; Coca Cola Works v. Mosby, 289 Mo. 462; State v. Miller, 45 Mo. 495; State v. Doerring, 194 Mo. 398. (3) The section of the act involved in this case is not a special law and does not, therefore, violate any part of the Constitution. "A statute is not special or class legislation if it applies to all alike of a given class, provided the classification is not arbitrary or without reasonable basis." Miner's Bank v. Clark, 252 Mo. 20; State ex rel. v. Burton, 266 Mo. 711; State ex rel. v. Roach, 258 Mo. 541. An act which embraces all persons who are or who may come into like situations or circumstances is not a special act. State ex rel. v. Wofford, 121 Mo. 61; State ex rel. v. Taylor, 224 Mo. 393. (4) The Section 9 of the act does not violate Section 30 of Article 2 of the Constitution of Missouri, nor Section 1 of the Fourteenth Amendment of the Constitution of the United States. These sections provide that no person shall be deprived of his life, liberty or property without due process of law. Due process of law means that every citizen shall hold his life, liberty, property and immunities under the protection of the general laws which govern society, and that in a contest regarding these rights he will be accorded an opportunity to contest the propriety of each step in the action sought to be taken against him. St. Louis v. Mo. Pac. Ry. Co., 211 S. W. 671; Jones v. Yore, 142 Mo. 38. By "the law of the land" is most clearly meant the general law, a law which hears before it condemns, which proceeds upon inquiry and renders judg-

ment only after trial. Barber Asphalt Co. v. Ridge, 169 Mo. 376; State v. Julow, 129 Mo. 163.

RAILEY, C.—On July 12, 1923, Ben Philipson, Associate Prosecuting Attorney of the St. Louis Court of Criminal Correction, filed in said court a verified information charging therein that Vito Tallo and Joseph Palermo of the city of St. Louis, on the 11th day of July, 1923, did unlawfully and wilfully sell and offer for sale in bottles, kegs and barrels liquid having the appearance, odor and taste of beer, without bearing the original label and full name of the brewer or manufacturer thereof, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State. Defendants were duly arraigned and entered their plea of not guilty. They filed a demurrer to the information, which was overruled. Thereupon they filed a motion to quash the information, and to suppress and exclude certain evidence, which said motion was overruled. At the conclusion of the State's evidence a demurrer thereto was sustained as to said Joseph Palermo, and overruled as to defendant Vito Tallo. Joseph Palermo was thereupon discharged from the case. At the conclusion of the whole case, appellant demurred to the evidence, which was overruled, and he offered no evidence in his own behalf. The case was tried by the court and defendant found guilty. His punishment was assessed at a term of sixty days in the workhouse of the city of St. Louis, and he was required to pay the costs, etc. A motion for a new trial was filed in due time and, on August 6, 1923, overruled. A motion in arrest of judgment was also filed and overruled. Judgment was entered in accordance with the finding of the court, that appellant be imprisoned in the workhouse aforesaid for sixty days, etc. Defendant was granted an appeal to the St. Louis Court of Appeals, and a supersedeas appeal bond given by him. The St. Louis Court of Appeals, on account of the constitutional questions presented in the case, transferred the same to this court.

On November 30, 1923, appellant filed in said Court of Criminal Correction his bill of exceptions in this cause.

The bond aforesaid was given for the appearance of defendant in the St. Louis Court of Appeals, etc.

The testimony of the State presented at the trial, is substantially as follows:

Rhodes C. Harper, a police officer connected with the St. Louis police department, testifying for the State, stated that on July 11, 1923, he arrested defendant, Vito Tallo, and later, Joseph Palermo, in a saloon at 2223 Washington Avenue; that Joseph Palermo conducted the place and Vito Tallo was the bartender; that Tallo was behind the bar at the time they entered; that they walked up to the bar and saw defendant Tallo step up to the bar with his hands down and then they smelled liquor; that they asked for some beverage and Tallo put out a bottle, and they asked what it was and he said he didn't know, and they asked how he knew what he was selling and he said he didn't know. Witness was asked to look at a bottle, and he said it looked like the bottle he took from the saloon and had his name on the tag. There was no name on the bottle nor on the cork to indicate by whom the contents were manufactured, nor writing of any kind on the bottle. Witness said Officer Nolan was with him at the time, and this all occurred in the city of St. Louis, Missouri.

On cross-examination witness stated that he went into the saloon and smelled the odor of alcohol; that he walked behind the bar and found a bottle of some liquor; that he supposed defendant Tallo knew they were police officers, and that he placed him under arrest for finding a bottle; that Tallo sold the bottle of beverage to witness after they had found the other bottle, defendant knowing they were police officers; that he asked for a drink of beverage and gave him money right at that time, and defendant Tallo evidently took it; that the bottle was sold to them after they had searched the place; that defendant took the bottle from the ice box; that the bottle was cold, and he drank part of the contents; that

he asked for the cap that was on the bottle and defendant gave it to him; that he reached down for it; that he paid a dime for the beverage, but didn't know what was done with the dime—that no search was made for it; that it was not marked; that they saw defendant pick it up; that they tried to make a case of a sale of unlabeled beverage and were in there for that purpose; that a Captain Matthews was with them also, but not in uniform; that the beverage they got there did not contain any intoxicating liquor; that he didn't know whether there had been a label on the bottle previously; that the bottle was cold and wet; that he couldn't swear whether it was the identical cap that came off the bottle; that he found similar caps and bottles in the place.

Charles Nolan, a police officer connected with the St. Louis Police Department, testifying for the State, stated that he assisted in the arrest; that they went in the soft-drink parlor and Tallo made some motion with his hands, and they smelled liquor, and he scooped up some of the supposed whiskey; that Officer Harper asked for a bottle of beverage, and defendant got that bottle out of the ice box, and the officer drank part of it and then placed Tallo under arrest; that a bottle offered in evidence was the same bottle, and there were no labels nor marks on it indicating what the contents were; that he saw Tallo put a cork on the bottle, but didn't know whether it was the same one; that it did not bear the name of the contents of the bottle; that he asked Tallo if that was his place, and he said he was just working there.

The bottle was offered in evidence and marked "State's Exhibit A."

On cross-examination, witness stated that after searching the place and finding the alcohol and dumping it into a bottle Officer Harper then asked defendant Tallo for a bottle of beverage; that Tallo said nothing, just pulled it out of the ice-box; that Officer Harper's exact words were, "Let me have a nice cold bottle of beverage;" that defendant Tallo knew they were police offi-

cers from coming in there before; that Officer Harper didn't tell him to sell him that bottle of beverage; that Harper asked the bartender, Tallo, for a cold bottle of beverage, and Tallo, knowing they were police officers, obeyed him, that he saw defendant pick up some money —a dime—but didn't know what he did with it; that the bottle was cold and wet.

On re-direct examination the witness testified that there was no label on the bottle at the time it was served to his brother officer, and he saw Harper lay down a dime in payment for the bottle and the bartender (Tallo) take it up.

That was all the testimony offered by the State. The defendant introduced no testimony on his own behalf.

The remaining questions presented in the record for our consideration will be disposed of in the opinion.

I.   The information herein is based on Section 9 of an Act approved April 3, 1923 (Session Laws 1923, page 239).   Appellant contends that the above act is contrary to the requirements of Section 28, Article IV, of the Constitution of Missouri, in this, that the title of said act is insufficient, because it contains more than one subject; because the subjects of the act are not clearly expressed in the title, and because there is no reference in the title to the provisions contained in Section 9 of the act, which attempts to make it unlawful to sell or offer for sale liquid having, the appearance, odor and taste of beer without original labels on the container, and such provisions are not germane to the subjects mentioned in the title.

The title to above act, as reported in Laws 1923, page 236, reads as follows:

"An Act to provide for the exercise of the police powers of the State, by and through prohibiting the manufacture, possession, transportation, sale and disposition of intoxicating liquors; defining soft drink bars, providing for the granting of permits to duly licensed

and reputable physicians to prescribe efhyl alcohol and wine for medical purposes; the issuance of permits to registered pharmacists or druggists to fill such prescriptions; prohibiting the possession and use of machinery and equipment for the distilling, brewing or fermentation of ethyl alcohol or wine; providing for the issuance and service of search warrants and other methods of enforcing the law of this act and other laws of this State pertaining to intoxicating liquors, and prescribing penalties for violation of this act, and all other laws of this State pertaining to the manufacture, possession, transportation, sale and disposition of intoxicating liquors 'and providing for the issuance and service of search warrants by judges of courts of record having jurisdiction in criminal cases, and by the justices of the peace' and providing penalties for violation.''

Section 1, 6, 7 and 9 read as follows:

"Sec. 1.    This entire act is hereby declared, and shall be deemed and construed, to be an act of the General Assembly of the State of Missouri, for the protection of the economic welfare, peace, health, safety, and morals, of its inhabitants, and all of the provisions of this act shall be liberally construed for the accomplishment of said purposes, or any thereof.

"Sec. 6.    The term 'soft drink stand' as used in this act shall be held and construed to include and refer to every place or portion thereof in which is conducted what is commonly called a 'soda fountain,' or 'soft drink counter' where soda waters, near beers, and other non-alcohol beverages are permitted to be sold. This section shall not be construed to include any department store, drug store, hotel, restaurant, or other place where a soft drink stand is simply an adjunct to the regular business.

"Sec. 7.    It shall be unlawful for any person having or conducting a soft drink stand, as in this act defined, to erect, or maintain, or to permit to be erected, or maintained, in his place of business, or as a part thereof, any partition, screen, blind, or other article, or thing,

that will obstruct a free and open view, at all times and under all conditions, from the sidewalk, or street, running alongside, or in front of such soft drink stand, and from which patrons thereof enter the room, or place, in which such soft drink stand is conducted. This section shall not be construed to include any department store, drug store, restaurant, or other place where a soft drink stand is simply an adjunct to the regular business.

"Sec. 9. It shall be unlawful for any person to sell or offer for sale, in this State, any near beer, imitation beer, or other liquid, or so-called soft drink, having the appearance, odor, and taste, of beer, in any soft drink stand or other place in this State, except the same shall be sold or offered for sale, in the original bottle, keg, or barrel, in which same was bottled by, and bearing the original label and full name of, the brewer or manufacturer thereof, upon the label on the side, and upon the cap, or cork, of such bottles, and ends of such kegs or barrels."

As to punishment for violation of said Section 9, see Section 22 of the same act.

It is doubtless true that the General Assembly, in passing the above law, was attempting to prevent the manufacture, sale, transportation and trafficking, in intoxicating liquors to be used for beverage purposes. As an incident to the enforcement of said law, the Legislature, in the exercise of its police power, was providing "for the protection of the economic welfare, peace, health, safety, and morals, of its inhabitants," as provided in Section 1 of said act. It was further provided in said Section 1 that "all of the provisions of this act shall be liberally construed for the accomplishment of said purposes, or any thereof." It may be said in passing that laws enacted by the Legislature are presumed to be valid. [State ex rel. v. Blake, 241 Mo. l. c. 107; State v. Iron & Steel Co., 268 Mo. l. c. 182 and cases cited; Washington Tp. R. Dist. No. 1 v. Robbins, 262 S. W. (Mo.) 46.] In considering this class of questions, it should also be kept in mind that the General Assembly

308 Mo. Sup.—38.

is a co-ordinate branch of the State Government, and that the members thereof, in the exercise of their respective duties, are expected to inform themselves as to *conditions* which exist throughout this State in respect to police regulations and requirements. From the complaints which frequently reach this court in criminal cases, and from the. reports of the metropolitan press of the country, it is manifest that these soft-drink parlors, in many instances, are a menace to the enforcement of the prohibition laws of the State; and that under, the guise of conducting their business, many subterfuges are resorted to, for the purpose of deceiving the public and dispensing intoxicating liquors.

In the recent case of Hicks v. Simonsen, 307 Mo. 307, in discussing a kindred subject, we said:

"It will be presumed in the absence of evidence to the contrary, that the legislators, in the exercise of their prerogatives, as members of the co-ordinate branch of the State Government, became satisfied, before passing the above section, that conditions existed within the counties called for in Article 2 of Chapter 53 of the Revised Statutes of 1919, which made it necessary, in the orderly administration of justice, to provide juries for the trial of cases, which were entirely disinterested, and free from the influence of attorneys on either side of the case. In view of the extent to which this court has gone, as shown in the authorities heretofore cited, we are unwilling to declare as a matter of law, that the legislators of the State in the exercise of their police power, acted unwisely in promoting the ends of justice by providing impartial jurors to try cases pending in court."

After carefully considering the law in question, we hold that the Legislature was within the Constitution in passing Section 9 of the act aforesaid, and that it is germane to the general subject which it had under consideration. [Coca Cola Bottling Co. v. Mosby, 289 Mo. 462; State v. Hanson, 234 Mo. 583; State v. Doerring, 194 Mo. 398; State v. Miller, 45 Mo. 495.]

II.   It is insisted by appellant that the Act afore-
said is a *special* law, and violates Sub-division 32 of
Special   Section 35 of Article IV of our Constitution; that
Law.   it violates Sub-division 26 of Section 53 of Article
IV supra; and that it violates Section I of the
Fourteenth Amendment to the Constitution of the United
States, etc.   We are not favorably impressed with the
soundness of above contention.   We have fully consid-
ered this subject in the recent case of Hicks v. Simonsen,
above mentioned, adversely to appellant's contention.
[See also Miners' Bank v. Clark, 252 Mo. 20; State ex
rel. v. Roach, 258 Mo. 541; State ex rel. v. Burton, 266
Mo. 711; State ex rel. v. Taylor, 224 Mo. 393; State ex
rel. v. Wofford, 121 Mo. 61.]

III.   Appellant contends that, on the undisputed
facts in the case, his demurrer to the evidence should
Demurrer   be sustained.   Section 9 of the Act of 1923,
to Evidence.   Laws 1923, page 239, furnishes the basis for
this action.   Among other things, it charges
that it shall be unlawful for any person to sell or offer
for sale, in this State, any near beer, imitation beer, or
other liquid, or so-called soft-drink, having the appear-
ance, odor and taste of beer, etc.   The information in
this cause charges that, on July 11, 1923, defendant did
unlawfully and wilfully sell and offer for sale, in bottles,
kegs and barrels, liquor having the appearance, odor and
taste of beer, etc.   The evidence is heretofore set out, and
speaks for itself.   There is not a syllable of testimony in
the case, either showing, or tending to show, the appear-
ance, odor or taste of beer, nor is there any evidence in the
record tending to show, that the liquid charged to have
been sold had the appearance, odor or taste of beer.
Rhodes C. Harper, police officer, testified as a witness for
the State and claimed to have bought from defendant
the bottle of liquid offered in evidence.   He said he drank
a portion thereof, and that the bottle did not contain
any intoxicating liquor.

Counsel for the State, in discussing this subject, on page 9 of their brief, say: "It is true that there was no direct evidence offered to show what real beer looks, tastes or smells like. It is also true that there was no direct evidence offered to prove that the liquid sold by appellant had the appearance, taste or odor of real beer." The above quoted statement is fully sustained by the record in the case.

We are asked to affirm the judgment on the ground that the trial court should be presumed to know the things required to be proven, regardless of any testimony on the subject. The defendant is presumed to be innocent throughout the trial of the case and, under the law, it devolves upon the State to show that he is guilty of the things charged against him beyond reasonable doubt. It would be a reproach upon our ruling, to hold that a judge, trying a criminal case, could, without evidence, convict the defendant on information possessed by himself, which is not disclosed by the record. Even in actions at law, tried by the court without a jury, unless there is substantial evidence in the record to sustain the judgment rendered, this court would reverse the case. [In re Lankford Estate, 272 Mo. l. c. 18-19; Pate v. Dumbauld, 250 S. W. (Mo.) l. c. 52-3.]

In State v. Goodson, 252 S. W. l. c. 392, in discussing this subject, we said: "The burden of proof devolves upon respondent to establish appellant's guilt beyond a reasonable doubt. The defendant is presumed to be innocent until the contrary legally appears, and no conviction based upon mere *speculation* or *conjecture,* as that shown in this case, should be permitted to stand." Numerous authorities are cited in support of this pronouncement. [See also Perkins v. Wilcox, 294 Mo. l. c. 719.]

We do not deem it necessary to consider this subject further. The judgment below is accordingly reversed and remanded. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.