CHARLES BLIND ET AL. v. PHILIP H. BROCKMAN ET AL., Appellants.—
12 S. W. (2d) 742.

Division One, October 3, 1928.

*Julius T. Muench* and *Oliver Senti* for appellants.

60

*Oakley & Frank* and *E. G. Davidson* for respondents.

LINDSAY, C.—The respondents, as plaintiffs below, one hundred and sixty-two in number, proprietors of soft-drink stands in the city of St. Louis, brought this suit to enjoin defendants, respectively, President of the Board of Police Commissioners, Chief of Police, and Chief of Detectives, of the city of St. Louis, from enforcing the provisions of the act approved April 3, 1923 (Laws 1923, pp. 236 to 247), and especially the provisions of Sections 6 and 7 of said act; and to restrain the defendants from interfering with the plaintiffs in the conduct of their business as proprietors of soft-drink stands as defined by the sections just mentioned. Section 6 of the act defines soft-drink stands; and by Section 7, the maintenance of screens, blinds or partitions therein obstructing the view from the sidewalk, is prohibited. These sections are as follows:

"Sec. 6. TERM 'soft-drink stand' construed.—The term 'soft-drink stand' as used in this act shall be held and construed to include and refer to every place or portion thereof in which is conducted what is commonly called a 'soda fountain,' or 'soft-drink counter' where soda waters, near beers, and other non-alcohol beverages are permitted to be sold. This section shall not be construed to include any department store, drug store, hotel, restaurant, or other place where a soft-drink stand is simply an adjunct to the regular business.

"Sec. 7. Obstruction in soft-drink stand prohibited.—It shall be unlawful for any person having or conducting a soft-drink stand, as in this act defined, to erect, or maintain, or to permit to be erected, or maintained, in his place of business, or as a part thereof, any partition, screen, blind, or other article, or thing, that will obstruct a free and open view, at all times and under all conditions, from the sidewalk, or street, running alongside, or in front of such soft-drink stand, and from which patrons thereof enter the room, or place, in which such soft-drink stand is conducted. This section shall not be construed to include any department store, drug store, restaurant, or other place where a soft-drink stand is simply an adjunct to the regular business."

Section 22 of the act defines the punishment for violation of its provisions, and Section 16 defines the duties of enforcement officials, to arrest persons found violating the provisions of this statute, and to make complaint thereof to the prosecuting attorney of the county.

The plaintiffs alleged the erection and maintenance at great ex-

pense, and for a long time before the passage of the act, of partitions, blinds, screens and booths as necessary to the successful conduct of their business; that defendants had warned them not to erect or maintain such blinds, screens and the like after June 23, 1923, and had threatened to arrest and prosecute plaintiffs or any of their employees acting in violation of these provisions; and, that defendants had arrested and prosecuted, and threatened to continue to arrest and prosecute, four persons named among the plaintiffs. Sections 6 and 7 were alleged to be unconstitutional as violative of certain designated provisions of the State and Federal constitutions, to be hereafter mentioned. Substantially the allegations thereunder are that Sections 6 and 7 seek to regulate trade, grant to corporations, associations or individuals special or exclusive rights, and are class legislation, such classification being arbitrary and without reasonable or lawful basis; that said provisions are oppressive, unreasonable and discriminatory, and far in excess of the regulations necessary to the proper protection of the welfare, peace, health, safety and morals of the inhabitants of the city of St. Louis and of the State; that they are not general or uniform upon the classes to which they apply or should apply; that they are discriminatory in exempting drug stores, restaurants and other designated places where a soft-drink stand is simply an adjunct to the regular business, and that they were enacted and designed, unjustly and illegally, to discriminate against the lawful business in which plaintiffs are engaged, and deprive them of their property and business. The act in respect to Sections 6 and 7, in their relation to other provisions, is also alleged to be violative of Section 28, Article IV, of the State Constitution in that it contains more than one subject, and the same is not expressed in the title. The title designates it as ''An Act to provide for the exercise of the police powers of the state by and through prohibiting the manufacture, possession, transportation, sale and disposition of intoxicating liquors; defining soft drink bars;'' followed, by recital of numerous particulars. Section 1 of the act is as follows:

''Section 1.—Construing act, and its provisions.—This entire act is hereby declared, and shall be deemed and construed, to be an act of the General Assembly of the State of Missouri, for the protection of the economic welfare, peace, health, safety, and morals, of its inhabitants, and all of the provisions of this act shall be liberally construed for the accomplishment of said purposes, or any thereof.''

Ten of the plaintiffs testified upon the trial. Their testimony was that they operated soft-drink parlors, sold soft drinks, cigars, cigarettes, candy and sandwiches, and some of them sold lunches; that they maintained blinds, screens, partitions and the like, excluding the open view from the side walk or street, in such manner as

the terms of the act forbade. A witness called by plaintiffs testified as to the value of the fixtures, in eleven of the places belonging to respective plaintiffs, and which it would be necessary to remove in order to comply with the statute. There was also some testimony on the part of plaintiffs that such fixtures, if removed, would be of little value for any purpose other than that for which they were being used. The evidence was that the plaintiffs operated under city and state licenses. There was no evidence that any of the plaintiffs, except one, had been arrested for violation of the provisions of Sections 6 and 7. Joseph Spotanski, one of the plaintiffs, testified that he had been arrested upon the ground mentioned, and taken to the police station, and held for about half an hour, and was released; was not required to give bond; and was not prosecuted. There was no evidence that the plaintiffs, or any of them, were threatened with arrest or prosecution for violation of Sections 6 and 7. The only evidence offered by defendants consisted of certified copies of records of the United States District Court, showing conviction of a considerable number of plaintiffs for violation of the prohibition laws. The trial court rendered judgment, making permanent the temporary injunction theretofore issued against defendants.

The defendants assign error on the grounds, (1) that the evidence did not entitle plaintiffs to an injunction, in that, there was no proof that defendants were threatening to enforce the statute against plaintiffs; (2) that the court erred in granting equitable relief, because plaintiffs did not come into court with clean hands, a considerable number of them having been convicted of violation of the prohibition law; (3) that the statute (Secs. 6 and 7) is constitutional.

The questions raised as to the constitutionality of the act are taken up as presented by plaintiffs in their brief. Under the assertion that the act is unconstitutional because it contains more than one subject and the provisions of Sections 6 and 7 are not expressed in the title, counsel cite State v. Crites, 277 Mo. 194, and State ex rel. v. Hackmann, 292 Mo. 27. The statute under consideration in the first-named case was what is known as the "Lobbyist's Law," and in the second case, the act relating to the rate of interest which might be borne by bonds issued by municipalities or school districts. The question in each of those cases was whether the subject as expressed in the title was not so clearly stated, and so confined and restricted by the particulars stated in the title, that it excluded the substance of the provisions in the body of the act constituting the basis of the issue involved in the case. In each, the effect of the holding was, that the statement of the particulars of the subject of the act was such as to exclude the provision complained of in the body of the act. A consideration of these cases and

of others, and of the provisions of the act before us, leads us to the conclusion that the subject of the act here under consideration is not so expressed as to bring it within the rule applied in those cases. The act has been before this court in a great number of cases; and, in some of them questions as to the sufficiency of its title, have been raised. Among these is State v. Tallo, 308 Mo. 584. Section 9 of the act was the one particularly considered in the Tallo case. This is the section making it unlawful for persons to sell or offer for sale, any near beer, imitation beer or other liquid, or so-called soft drink, having the appearance, color and taste of beer, in any soft-drink stand or other place in this State, except the same be sold or offered for sale in the original bottle, keg or barrel in which the same was bottled, and bearing the original label and full name of the manufacturer thereof. In the opinion in that case, Sections 6 and 7 are quoted. The defendant was prosecuted under the provisions of Section 9. The validity of Section 9 was assailed as for defective title. The holding was that the provisions of Section 9 were germane to the general subject which the Legislature had under consideration. Without express statement of it, the opinion clearly recognized the relation between the provisions of Section 9 and the provisions of Sections 6 and 7. Subsequently, in State v. Boyer, 318 Mo. 585, 300 S. W. 826, the validity of the act in question was assailed upon the ground that it embodied more than one subject as expressed in its title, in violation of Section 28, Article IV, of the Constitution. This court said at page 591:

"It was held in State v. Tallo, 308 Mo. 584, 274 S. W. 466, that Section 9 of said statute, regulating the sale of soft drinks, is germane to the general subject of the statute, and hence did not render the latter inimical to the above constitutional provision. Sections 6 and 7 also have reference to the sale of soft drinks. These sections, while not expressly designated, must form the burden of appellant's objection; their purpose being the same as that of Section 9, they may for a like reason to that stated in the Tallo case be held to not render the statute invalid as in violation of the Constitution. In discussing the constitutional validity of the statute we are, as we have often held, concerned only with the organic law of our own State." Our conclusion is that the title of the act in question is sufficient to cover the provisions embodied in Sections 6 and 7, as well as those of Section 9.

It is insisted by counsel for defendants that Sections 6 and 7 violate the provisions of Subdivisions 24, 26 and 32 of Section 53, Article IV, of the State Constitution; that they constitute class legislation, the classification being arbitrary and without reasonable or legal basis, in that, said section exempts from the operation of the law persons or

firms in the same line of business. The act is an exercise of the police power of the State, and by its terms is to be construed as one enacted "for the protection of the economic welfare, peace, health, safety and morals of inhabitants of the State."

The provisions of Sections 6 and 7 are included as being deemed appropriate to, and in aid of the general purpose of law. By Section 6 a class is defined to which the prescribed restrictions or regulations apply. That class, is the "soft-drink stand," the same not being a "department store, drug store, hotel, restaurant, or other place where a soft-drink stand is simply an adjunct to the regular business." It must be conceded that the Legislature, in enacting this measure, did so with the design of preventing and correcting an evil which it conceived to exist. The question is whether the classification made is arbitrary and unreasonable, whether there is substantial ground for the distinction made. The enactment carries with it necessarily the conclusion, that in the opinion of the Legislature there was an evil to be prevented; that this evil was mainly to be feared from the class defined, and further that this opinion of the Legislature was founded upon observation and experience of the actual conditions, and considered to be ground for a distinction reasonably to be drawn between the soft-drink stand, operated in a department store, drug store or other place as an incident or adjunct to the regular business done, and the soft-drink stand operated primarily as such, and as the paramount purpose of the business done.

The State may not arbitrarily subject some to certain restrictions or requirements, leaving others, fairly and reasonably falling in the same class, free from the operation of such restrictions and requirements. To this effect are decisions cited on behalf of defendants. [State v. Miksicek, 225 Mo. 561; State v. Empire Bottling Co., 261 Mo. 300; State v. Baskowitz, 250 Mo. 82.]

In State v. Miksicek, the prosecution was on two counts, respectively, under Sections 10088 and 10089, Revised Statutes 1899. Section 10088 was a provision regulating the hours of labor of those employed in bakeries. The ground upon which that section was held unconstitutional is not of near application to the question we have under consideration. The grounds upon which Section 10089 was held unconstitutional, were, that the act assumed to treat all bakeries as a class which included biscuit, bread, pastry or cake bakeries, or other bakeries or confectionary establishments. Section 10089 required certain measures for sanitation and put such requirements only upon bread, biscuit and cake bakeries, while pastry and cracker bakeries were exempt from its operation. It was held that the same reasons existed for keeping the one class in proper sanitary condition

as were essential in the other, and that there was, by said section, discrimination between persons belonging to the same class.

In State v. Empire Bottling Company, the statute under review was one prohibiting the use of saccharin in non-alcoholic drinks. It was held that the only justification for prohibiting its use in non-alcoholic drinks was, that such use was deleterious; and, if that were true, the statute, in prohibiting its use in non-alcoholic drinks and permitting it in others was discriminatory.

In State v. Baskowitz, the act was held to be unconstitutional as class legislation because it was a discrimination between bottlers engaged in soda and mineral water business, and those engaged in bottling ale, beer, milk and medicine; that the law operated for the exclusive benefit and protection of manufacturers of bottles used in soda water and mineral water business, and there was no reason apparent why, by force of such a law, they should receive an advantage which was withheld from the others.

"But a State may classify with reference to an evil to be prevented, and if the class discriminated against is, or reasonably might be, considered to define those from whom the evil mainly is to be feared, it properly may be picked out. A lack of abstract symmetry does not matter. The question is a practical one, dependent upon experience." [Cooley's Constitutional Limitations (8 Ed.) 813.] Following that the author makes reference to the decision in Patsone v. Pennsylvania, 232 U. S. 138. That was a prosecution under a statute which made it unlawful for any unnaturalized foreign-born resident to kill any wild bird or animal, except for defense of person or property, and to that end, made it unlawful for such foreign-born person to be possessed of a shot gun or rifle. Speaking of the question of alleged unconstitutional discrimination alleged to be embodied in the law, the Supreme Court said, 1. c. 144: "A lack of abstract symmetry does not matter. The question is a practical one dependent upon experience. The demand for symmetry ignores the specific difference that experience is supposed to have shown to mark the class. It is not enough to invalidate the law that others may do the same things and go unpunished, if, as a matter of fact, it is found the danger is characteristic of the class named."

Germane to the foregoing is the statement found in the opinion in State v. Tallo, supra, at page 593:

"In considering this class of questions, it should also be kept in mind that the General Assembly is a co-ordinate branch of the State Government, and that the members thereof, in the exercise of their respective duties, are expected to inform themselves as to *conditions* which exist throughout this State in respect to police regulations and requirements. From the complaints which frequently reach this

court in criminal cases, and from the reports of the metropolitan press of the country, it is manifest that these soft-drink parlors, in many instances, are a menace to the enforcement of the prohibition laws of the State; and that under the guise of conducting their business, many subterfuges are resorted to, for the purpose of deceiving the public and dispensing intoxicating liquors.''

In Hawkins v. Smith, 242 Mo. 688, the provisions of the State Constitution forbidding class legislation heretofore mentioned, and also the Fourteenth Amendment to the Federal Constitution, were under consideration. Upon the question of classification by the Legislature of the objects of legislative enactments, this court said, at page 695:

''Undoubtedly the Legislature possesses the power to 'select and classify objects of legislation,' and just as undoubtedly may exercise a wide discretion in the exertion of that power.

'' 'There is, therefore, no precise application of the rule of reasonableness of classification, and the rule of equality permits many practical inequalities. And necessarily so. In a classification for governmental purposes there cannot be an exact exclusion or inclusion of persons and things.' It is 'sufficient to satisfy the demand of the Constitution if a classification is practical and not palpab'; arbitrary.' [Louisville & Nashville Railroad v. Melton, 218 U. S. 1. c. 55.] 'The selection, in order to become obnoxious to the Fourteenth Amendment, must be arbitrary and unreasonable, not merely possibly, but clearly and actually so.' [Bachtel v. Wilson, 204 U. S. 1. c. 41.] Again, 'A classification may not be merely arbitrary, but necessarily there must be great freedom of discretion even though it result in ill-advised, unequal and oppressive legislation.' [Heath & Milligan Co. v. Worst, 207 U. S. 1. c. 354; Callahan v. Railroad, 170 Mo. 1. c. 494; Holden v. Hardy, 169 U. S. 1. c. 393, et seq.; Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61; St. Louis Const. Coal Co. v. Illinois, 185 U. S. 203.]

''The Legislature in the exercise of its power to classify is not required to trace with a hair line the boundaries of the class to which the resulting enactment shall apply.

''Neither State nor Federal Constitution proceeds upon the assumption that the Legislature is omniscient, nor is the discretion of that magistracy to be superseded by that of the courts in any case. It is only when the limits of legislative *power* have been transcended that the courts may extend a restraining hand.''

The above observations were made in view not only of the provisions of the Fourteenth Amendment of the Constitution of the United States, but also the provisions of Article IV of the State Constitution. Under the principles therein stated and the pro-

visions of the act under consideration, we go upon the presumption that the Legislature, in enacting Sections 3 and 7, recognized the existence of a condition, and acted with reason and not from caprice, and we hold that the classification made is not arbitrary or unreasonable in such sense as to transgress the limits prescribed by the Constitution in that regard.

It is insisted that these sections of the act violate the provisions of Article V, and of Section 1 of Article XIV, of the Amendments to the Constitution of the United States, and Section 30 of Article II of the Constitution of this State, in that, they constitute the taking of property without due process of law, abridge the privileges or immunities of plaintiffs, as citizens of the United States, and deny them the equal protection of the laws.

The objection based upon the Fifth Amendment to the Constitution of the United States needs no discussion. In Capital City Dairy Co. v. Ohio, 183 U. S. 238, l. c. 245, it was said: "It is elementary that that amendment operates solely on the National Government and not on the States."

Under the contentions made upon other constitutional provisions, counsel for defendants cite State ex rel. v. McKelvey, 301 Mo. 1, and City of St. Louis v. Evraiff, 301 Mo. 231, cases arising under the ordinance of the city of St. Louis dividing the city into five zones, based upon the use to which property in said zones or districts might be put. Those cases were determined upon the principle that the restrictions put upon the use of private property in each zone had no relation to the health, safety, comfort and welfare of the inhabitants, and constituted a deprivation of the use of the same, and the taking of private property for public use without compensation, in violation of the Constitution. The determination of those cases under the issues there involved, and upon the grounds stated, is not controlling upon the issue in the instant case.

Our attention is called to St. Louis v. Dreisoerner, 243 Mo. 217, a case arising upon an ordinance making it unlawful to operate certain industries, or carry on any of certain designated kinds of business in any building, or on any lot of ground within 600 feet of Tower Grove Park, without permission of the Municipal Assembly by ordinance. The ordinance was held void and not within an authorized exercise of the police power of the city, which, it was said, l. c. 223, "only extended to the regulation of employments prejudicial to the public safety, health, morals and good government of the citizenry, and it 'ends where those public interests are not beneficially served thereby.' It cannot sanction the confiscation of

private property for aesthetic purposes." The instant case presents no such situation as that just referred to.

Saffee v. City of Buffalo, 204 Appellate Division (N. Y.) 561, was a suit brought by certain persons engaged in "a refreshment business" as defined by an ordinance of the city of Buffalo, and an injunction was sought against the enforcement of the ordinance. A refreshment business, as defined by the ordinance, was one operated for the sale of any soft drink (excepting coffee, milk, chocolate or cocoa), and "not containing a greater portion of alcohol than is permitted by law." The ordinance required that there be an unobstructed view of the interior of the place; prohibited business during certain hours; provided for inspection, and contained numerous regulatory provisions. Its validity was sustained. The New York Court said, 1. c. 563: "That the life, liberty and property of the individual should be secure from the tyranny of government is a fundamental principle of democracy. To that end exist the constitutional guaranties here invoked. But that principle has its counterpart in the police power, 'a dynamic agency, vague and undefined in its scope' (per POUND, J., in People ex rel. Durham Realty Corp. v. LaFetra, 230 N. Y. 442), by which the public is secured against the encroachment and selfishness of the individual. So far and only so far as the public needs security from the individual may appeal be made to that agency. [People ex rel. Nechamcus v. Warden, etc., 144 N. Y. 529.] Hence, when the question arises, there are two tests to be applied: 1. Is there a real evil, reasonably to be guarded against? 2. Is there a reasonable relation between the evil and the proposed remedy? [Matter of Stubbe v. Adamson, 220 N. Y. 459, 469; Lawton v. Steele, 152 U. S. 133, 137.] And the answers are to be given by the court. [Lochner v. New York, 198 U. S. 45, 57.] The question whether there was an evil to be guarded against, the court answered in the affirmative, starting with the presumption to that effect, and the assurance of the ordinance itself that it was "immediately necessary for the preservation of the public peace, health and safety;" and further, that the increase in the number of places dealing in soft drinks was "a matter of common knowledge," as well as the character of many of them. That court was more positive in its utterance than Division Two of this court in the Tallo case. The New York court said it was a matter of common knowledge "that many of these places are mere covers for illegal liquor traffic, and have become centers for crime, and meeting places of criminals; and, that as an incident of those things poisonous and otherwise harmful concoctions have been, and are being there made and illegally disposed of." The court held there was a reasonable relation between the evil and the proposed remedy.

70

It may be that compliance with the provisions of the Sections under consideration may entail some expense, or loss in value of property, which plaintiffs now use for partitions, blinds, screens and the like; but, that does not mean confiscation, or taking of property without due process of law, unless it must be held to result from an arbitrary exercise of power on the part of the Legislature. The mere fact that the law cannot be enforced without causing some expense to the citizen who comes within its terms, does not violate the Constitution or justify the court in nullifying a legislative enactment. The requirement making it necessary that plaintiff remove blinds, screens and any other obstructions to the open view of their soft-drink stands or parlors, as a condition of their right to operate them, is not an appropriation of their property for a public use, but is a regulation of the use of it by the owners; and the statement of the conditions under which they may engage in that business. Among the cases cited by counsel for plaintiffs under their contention that the police power of the State ends where public interests are not beneficially served thereby, is St. Louis Gunning Co. v. St. Louis, 235 Mo. 99. The statement in the opinion in that case defining the limits of police power at page 200, defines it as a power whose right of exercise, ''begins where the public safety, health, morals and good government demand regulation, and ends where those public interests are not beneficially served thereby.''

The mere question of the wisdom expressed in a law operating within these limits, is for the Legislature. The question whether the exercise of the power has transgressed the limit fixed by the organic law is one for the courts. While it is the duty of the courts to guard the constitutional rights of the citizen against merely arbitrary power, it is equally true that legislative enactments should be recognized and enforced by the court, as embodying the will of the people, unless they are plainly and palpably a violation of the fundamental law of the constitution. [Atkin v. Kansas, 191 U. S. 223.]

Our conclusion is that we are not justified in declaring unconstitutional the provisions of the act under consideration.

There are some discussions of the question of the power of a court of equity to enjoin enforcement of an alleged unconstitutional law. In view of the conclusion we have heretofore reached and announced, it is unnecessary to discuss that question. The judgment of the trial court is reversed. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.